**Norman W. OLIVER,
Plaintiff, Appellant,**

v.

**DIGITAL EQUIPMENT CORPORA-
TION, Defendant, Appellee.**

No. 87–1909.

United States Court of Appeals,
First Circuit.

Heard March 7, 1988.

Decided May 13, 1988.

Harold F. Brunault, Holyoke, Mass., for plaintiff, appellant.

Philip M. Berkowitz with whom Susan A. Romero and Epstein Becker & Green, P.C., New York City, were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, WISDOM,[*] Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Plaintiff-appellant Norman Oliver (Oliver) appeals a summary judgment in favor of defendant-appellee Digital Equipment Corporation (Digital). Oliver filed suit in the district court on January 14, 1983. He claimed that, because he was black, Digital discriminated against him in the terms and conditions of his employment inevitably leading to his discharge. His complaint, as amended, alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a), –3(a), 42 U.S.C. § 1981, and Mass. Gen. Laws ch. 151B, § 4(1) *et seq.*

Nine claims for relief were alleged in the original complaint: (1) harassment on the job; (2) failure to provide Oliver with proper and adequate training; (3) unsatisfactory work evaluations which were distorted or fabricated; (4) contradictory and arbitrary reponses to Oliver's attempts to obtain job transfers within the company which were designed to undermine Oliver's efforts while appearing to support them and to place Oliver in a position whereby he could not succeed; (5) arbitrary and discriminatory discipline; (6) retaliation for filing charges with the Massachusetts Commission Against Discrimination and the Equal Opportunity Commission;[1] (7) changing the classification of the job for which Oliver interviewed after he was hired resulting in impairment of his growth and development within the company as well as of salary increases; (8) engaging in discriminatory practices against non-Caucasians; and (9) violating Mass.Gen.Laws ch. 151B, § 4(1) *et seq.* by all of the aforementioned actions. The amended complaint alleges that the reasons given for Oliver's discharge were pretextual.

---

[*] Of the Fifth Circuit, sitting by designation.

1. Both Commissions dismissed Oliver's complaints, the EEOC finding "no reasonable cause" and the MCAD finding "no probable cause" to believe Digital engaged in any of the discriminatory conduct alleged.

Discovery consisted mainly of the deposition of Oliver, taken at different times, and his answers to interrogatories. Oliver initially responded to Digital's motion for summary judgment with a request pursuant to Federal Rule of Civil Procedure 56(f) for an extension of time in which to complete discovery. The district court found the request deficient because Oliver did not allege specific facts that would be developed through further discovery to "breathe life into his claims," citing *Hebert v. Wicklund*, 744 F.2d 218, 222 (1st Cir.1984); *Taylor v. Gallagher*, 737 F.2d 134, 137 (1st Cir.1984). Because he was then proceeding *pro se*, the district court allowed Oliver further time to frame an appropriate affidavit to support his Federal Rule of Civil Procedure 56(f) motion. Oliver's subsequent filing was no more effective, and the district court granted Digital's motion for summary judgment.

The crux of the district court's opinion is the following holding. "Assuming that Mr. Oliver had made out a *prima facie* case, defendant has provided legitimate nondiscriminatory bases for its conduct which plaintiff has failed to demonstrate are pretextual." The district court's decision does not specifically refer to Oliver's state law claims, granting Digital's motion for summary judgment without reservation. Since Digital's motion clearly includes the state law claims, we have no doubt the district court intended to dismiss these claims as well as the federal claims.

STANDARD OF REVIEW

The root issue in any summary judgment review is whether the provisions of Federal Rule of Civil Procedure 56(c) have been met: Do "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"? The Court has stated:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To demonstrate that no genuine issue of material fact exists, the moving party must point out "an absence of evidence supporting the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In reviewing the trial court's grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion, and must indulge all inferences favorable to that party. *See Metropolitan Life Insurance Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir.1984); *King v. Williams Industries, Inc.*, 724 F.2d 240, 241 (1st Cir.1984), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1986). The party opposing the motion, however, may not rest upon mere allegations; it must set forth specific facts demonstrating that there is a genuine issue for trial. *See Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988) (citing *Perez De La Cruz v. Crowley Towing & Transportation Co.*, 807 F.2d 1084, 1086 (1st Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987)).

THE FACTS

We state the facts in the light most favorable to Oliver. He began working for Digital in June of 1980 as a Mechanical Engineering Technician III. During his hiring interview, a higher level position was discussed—Technician IV. The salary offered, however, was the same for both classifications. Oliver contends that he was given the lower classified position because of his race. In his deposition, however, he testified that he had no idea why he was not hired as a Technician IV and that any reason he might give would be speculative.

At the time he was hired, Oliver requested that he be assigned to the second shift so that he could attend college during the day. Oliver understood that Digital had

agreed to this, but he was placed on the first shift when he started work. He took the matter up with a superior and he was assigned to the second shift, but was warned that he might be returned to the first shift if there was a decrease in second shift work. He was returned to the first shift some months later. Subsequently, Oliver and a number of other employees were placed on "excess" status, workers who have no regularly assigned jobs but fill in as needed. Digital gave a decline in the market as the reason for this action. Oliver stated in his deposition that, to his best knowledge, all the other persons placed in "excess" status were white. After Oliver and a white co-worker, a Technician II, were declared excess, another white employee went on the second shift with responsibilities similar to those of Oliver and his co-worker. Subsequently, Oliver was classified as a Technician II in a position different from the one for which he was originally hired.

Oliver claims that Digital gave him inadequate training. As an example he cited a company instruction course he attended in August of 1980. Oliver had understood that he would be given this course earlier so that his attendance at it would not interfere with his college attendance. Digital, however, had informed Oliver that it was usual company policy to require three months' work experience before an employee could attend a course of instruction. Oliver testified in his deposition that the course instructor was fair and that he received the same instructions as the other course attendees. He maintained, nevertheless, that the goals were unfairly high. He attributed his poor performance on the test given at the end of the course to his lack of "hands on" experience with the machines he was to repair.

Although Oliver acknowledged that he did receive extra training during his employment at Digital, he maintained that he was not given sufficient training to reach the goals set for him. He was unable to say whether the training white employees received was comparable to what he was given or better. He alleged that another black technician had been told by a machine operator not to help Oliver in any way.

Oliver contended that the poor work evaluations he received from his supervisors were the result of racial discrimination. As support for this, he stated that he was the only black in the group and the only person to receive such poor work evaluations. Oliver also cited inadequate training and work assistance and unrealistic goals as reasons for his poor performance evaluation. These factors, he asserted, were the direct result of discrimination.

Oliver received a number of formal (written) warnings regarding tardiness, absence from work, and absence from his work station. As a consequence, he was ordered to conform to certain time restrictions not imposed upon all other employees, including punching a time clock. Oliver conceded that a white co-worker was also subject to the same constraints.

Oliver's last supervisor warned him that if he did not progress in his ability to repair equipment he would have to be discharged. A work and training schedule was devised by this supervisor with goals that Oliver was expected to meet. After both a verbal and written warning for failing to meet the schedule goals, Oliver was discharged on December 8, 1983, for poor performance.

There is no dispute as to Oliver's work record, the training given him, the evaluations he received, and the warnings issued to him. The only dispute is as to why Oliver was discharged. Digital asserts that it was because he was unable to do the work assigned to him. Oliver claims in effect that Digital's whole course of conduct towards him from the day he was hired to the day he was fired constituted disparate treatment because of his race. We turn next to the law.

TITLE VII CLAIM—DISPARATE TREATMENT

The inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff. "In other words, is 'the employer ... treating "some people less favorably than others because of their race, color, religion, sex, or national ori-

gin." ' " *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), in turn quoting *Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)).

The plaintiff may prove intentional discrimination by direct evidence or through facts which support an inference of discrimination. There is no direct proof of discrimination in Oliver's case. Rather, the allegations which Oliver makes fall within the rubric of indirect proof for a "disparate treatment" claim under Title VII as recognized in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Fields v. Clark University,* 817 F.2d 931, 935 (1st Cir.1987).

In *McDonnell Douglas,* the plaintiff, a mechanic and laboratory technician, brought suit under Title VII, alleging that defendant improperly refused to rehire him after a layoff because of his race and because of his involvement in civil rights demonstrations against the corporation. Only the claim that defendant had made its decision not to rehire Green on the basis of race was before the Court. The Court held that plaintiff could establish a *prima facie* case of discrimination by showing:

 (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the plaintiff has proved a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant provides such a reason, the plaintiff must prove that the reason given is merely a pretext for the employer's actions in order ultimately to prevail on the claim of discrimination. *Id.* at 804, 93 S.Ct. at 1825.

Oliver's claims do not fall neatly within the *McDonnell Douglas* framework since Oliver does not allege that Digital refused to hire him on the basis of his race but, instead, claims that Digital fired him on that basis and in retaliation for filing discrimination charges against it. *McDonnell Douglas,* however, often has been applied to factually different claims which, if proven, may still be characterized as "disparate treatment." Allegations of both discriminatory firing and retaliatory action have been held to fit within *McDonnell Douglas. See Rowlett v. Anheuser–Busch, Inc.,* 832 F.2d 194 (1st Cir.1987) (Title VII and § 1981 claims of racial discrimination in denying training, pay raises, unlawful discharge on basis of race, and in retaliation for filing charges with EEOC); *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d 64 (1st Cir.) (Title VII claims of sex discrimination in decisions regarding job transfer, salary, and employee discharge), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979) (claim of age discrimination in firing under Age Discrimination in Employment Act of 1967).

Pursuant to *McDonnell Douglas,* we must first determine whether Oliver has established a *prima facie* case of discrimination. In answering this question, we must also consider Digital's response, since "a reviewing court 'need not linger long over the question of whether [the plaintiff] in fact established a *prima facie* case' if the defendant has met its burden of articulating a legitimate non-discriminatory reason for its actions." *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d at 70 (quoting *Sweeney v. Research Foundation of State University of New York,* 711 F.2d 1179, 1184 (2d Cir.1983)); *see also United States Postal Service Board of Governors v. Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482 ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.").

Moreover, Digital's stated reason for discharging Oliver and plaintiff's *prima facie* case are in this case irretrievably intertwined. Digital asserts that its reason for discharging Oliver is that his job performance was not satisfactory. This is akin to saying that he was not qualified to do the job. *See Loeb v. Textron, Inc.*, 600 F.2d at 1013. Proving that he was qualified for the job was an essential element of Oliver's *prima facie* case. Although the *McDonnell Douglas* formulation for proving discrimination "was never intended to be rigid, mechanized or ritualistic," *Furnco Construction Corp. v. Waters*, 438 U.S. at 577, 98 S.Ct. at 2949, and the elements of proof may sometimes vary, "it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977).

Based on an examination of the record in the light most favorable to plaintiff, we cannot find that Oliver showed he was qualified for the job. In his deposition, Oliver conceded that he was unable to perform the work assigned to him, "debugging" computer boards. Oliver argues that he cannot show he was qualified because the discrimination against him was very subtle. He contends that his ability to meet job requirements was effectively sabotaged from the time he was hired, that Digital gave him inadequate training and set impossible goals, intending all along that he would fail so that Digital could terminate him. This amounts to a claim that Digital decided to fire him immediately after hiring him. This is a difficult theory to accept, particularly since there is no

evidence that Digital was under any compulsion to meet a minority hiring quota or any similar constraint. Oliver did not present any evidence that his training was different from that given to others at Digital or was in any other way deficient.[2] On the contrary, in his deposition he repeatedly characterized many of those who supervised and trained him as "fair." We find that Oliver did not establish a *prima facie* case within the teaching of *McDonnell Douglas*.

Even if Oliver had established a *prima facie* case, we would still find for Digital. A *prima facie* case is not the equivalent of an ultimate finding of discrimination. *Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251, 254 (1st Cir. 1986) (citing *Furnco Construction Co. v. Waters*, 438 U.S. at 577, 98 S.Ct. at 2949–50). It gives rise to an inference of unlawful discrimination, creating a presumption which can be rebutted if the defendant articulates a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Once the defendant meets this burden, "the presumption of discrimination 'drops from the case....'" *White v. Vathally*, 732 F.2d 1037, 1040 (1st Cir.) (quoting *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984).

To meet its burden, defendant is not required to persuade a trier of fact that it was in fact motivated by the proferred reason and not a nondiscriminatory one. Defendant's burden is one of production, not persuasion. It must only articulate a valid reason. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094; *Board of Trustees of Keene State College v. Sweeney*, 439

**2.** The only different treatment Oliver alleges with respect to training is the timing of training argument which is both contradictory and confusing. On the one hand, Oliver alleges that he should have been permitted to attend the initial Digital training course early in the summer so that he could pursue his college education outside working hours, while on the other hand he

argues that he was forced to attend the course and take the related examination before he had gained enough "hands on" experience with the machines, experience other employees gained by having three months' experience at the job before they were enrolled in the course. Oliver thus argues that the course was *both* too early and too late.

U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d at 200; *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d at 70; *Loeb v. Textron, Inc.*, 600 F.2d at 1011–12. The burden of production can be met by introducing admissible evidence that "raises a genuine issue of fact as to whether [defendant] discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094. The explanation defendant provides must be "clear and reasonably specific," *Burdine*, 450 U.S. at 258, 101 S.Ct. at 1096, because plaintiff must be given a final opportunity to carry his burden of proving discrimination by showing that defendant's proferred reasons are merely pretextual. The plaintiff can hardly be expected to discredit defendant's reasons unless he possesses some understanding of what they are. Therefore, defendant must offer more than vague, general averments of good faith. *See Loeb*, 600 F.2d at 1011–12 n. 5.

◼ We find Digital met its burden. It filed affidavits from four of Oliver's former supervisors; each affidavit stated that all decisions regarding Oliver were based upon his job performance, not upon his race. In addition, Digital submitted work and training evaluations of Oliver prepared by his supervisors and two warnings that he would be discharged if he could not meet Digital's expectations in the position he then held. Digital stated a legitimate, nondiscriminatory reason for Oliver's discharge. Its proferred proof was more than sufficient to apprise Oliver of its position.

The remaining question is did Oliver present evidence sufficient to raise a genuine issue of fact as to whether Digital's stated reason was only a pretext for intentional discrimination. Oliver could have met this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation [was] unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (citing *McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825).

Oliver produced no direct evidence of intent to discriminate. Nor do we find that Oliver provided indirect evidence from which it could be found that Digital's explanation was "unworthy of credence." Oliver does not dispute that he could not properly repair modules as required, particularly during his final months as a Technician II when he often was unable to repair any at all. His pretext argument is that this factual basis for firing him was "arranged" through Digital's discriminatory conduct of denying him training to learn the necessary skills and its consistently overly "aggressive" goal-setting. As already noted, we find this a difficult theory to accept under the circumstances. Nevertheless, had Oliver presented evidence that his training was indeed different from that given to others, specifically to nonminorities, or that he was asked to accomplish tasks different from those assigned to other similarly classified employees, then we might find Oliver entitled to proceed beyond this point. Oliver, however, made only unsubstantiated allegations. We agree with the district court that Digital was entitled to summary judgment. It met its legal burden under *McDonnell Douglas* and Oliver failed to establish the existence of a genuine issue of material fact. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Dea v. Look*, 810 F.2d 12, 16 (1st Cir.1987).

◼ Oliver contends that summary judgment is inappropriate in an action involving an issue of motivation. Although we have advocated caution and restraint in this context, *see, e.g., Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928–29 (1st Cir.1983), we will not refuse to affirm a grant of summary judgment where it is warranted. We have done so in employment discrimination actions before this. *See, e.g., Dea v. Look*, 810 F.2d 12 (age discrimination claim); *Velazquez v. Chardon*, 736 F.2d 831 (1st Cir.1984) (political discrimination); *Mendez v. Belton*, 739 F.2d 15 (1st Cir.1984) (race and sex discrimination). Finally, Oliver's offer to prove at trial that Digital's cited reasons were pretextual does not fill the void left by his

unsupported allegations and speculations. *See Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1st Cir.1980). Digital established that it was entitled to summary judgment.

### Disparate Impact and Past Discrimination

■ Oliver argues that Digital should be subjected to a greater burden than *McDonnell Douglas* imposes. He suggests that Digital's actions "must be for the most compelling business reasons," citing *Watkins v. Scott Paper Co.*, 530 F.2d 1159 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976). Oliver also cites *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), for the proposition that a practice which is fair in form may still be discriminatory in operation and that only business necessity can justify a practice which has an unequal effect upon minority and nonminority employees. Neither of these cases applies to the allegations of discriminatory conduct Oliver has made.

In *Griggs*, the Supreme Court examined Duke Power Company's practice of requiring any applicant for a job in any department other than a position in the lowest paying labor department to possess a high school degree or to pass a standardized general intelligence test. Both requirements "operate[d] to disqualify Negroes at a substantially higher rate than white applicants." *Griggs*, 401 U.S. at 426, 91 S.Ct. at 851. The Court found that Title VII proscribes all practices fair in form but discriminatory in operation as well as overt acts of discrimination. *Id.* at 431, 91 S.Ct. at 853. The Court held that where the consequences of an employment practice are discriminatory, "Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question." *Id.* at 432, 91 S.Ct. at 854. In other words, "[t]he touchstone is business necessity." *Id.* at 431, 91 S.Ct. at 853.

*Watkins* involved an Alabama employer that had for many years openly engaged in discriminatory practices. When those prac-tices were discontinued, the employer, as in *Griggs*, required applicants for higher-paying positions, and eventually for all jobs, to possess high school degrees or to pass certain tests. Again the effect was to exclude far more blacks than whites from particular jobs. The Fifth Circuit held that the defendant must show a business necessity for the requirements imposed because it was under an obligation to "undo" the effects of past discrimination. 530 F.2d at 1168.

An employer can be placed under a higher burden than *McDonnell Douglas* upon a showing of past discrimination or the disparate impact of an employment practice. But Oliver has not alleged prior discrimination by Digital, nor has he demonstrated that any conduct on the part of Digital had a disparate impact upon blacks. With one exception, he has not provided evidence of the effect of any Digital action upon anyone other than himself. The only conduct by Digital Oliver cites which affected others in any way was Digital's decision to place several workers on "excess." No disparate impact resulted from that decision, however, since Oliver stated that all the other employees affected were white. The reasons for the higher burdens imposed in *Griggs* and *Watkins* are not present here.

### THE RETALIATION CLAIM

■ Oliver's retaliation claim also fails. In *Rowlett v. Anheuser–Busch, Inc.*, we found that the plaintiff had established a *prima facie* case of racial discrimination in his discharge by showing that he had filed a race discrimination claim against *Anheuser–Busch*, and that he was discharged "not long" after filing that claim. 832 F.2d at 202. A showing of discharge soon after the employee engages in an activity specifically protected by section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation. *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). No such strong suggestion appears

in Oliver's case. Oliver filed his first complaint with the EEOC in March of 1981. He was not discharged until December 1983.

SECTION 1981 CLAIM

■ Summary judgment for Digital was also appropriate with respect to Oliver's claim that Digital's alleged conduct constituted a violation of section 1981. Section 1981 reaches only purposeful discrimination. A plaintiff may not make a disparate impact claim under section 1981 since actions involving disparate impact can include practices which are neutral not only on their face but in terms of intent. *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 389, 102 S.Ct. 3141, 3149, 73 L.Ed.2d 835 (1982). When a plaintiff seeking to establish a claim pursuant to section 1981 offers indirect proof of purposeful discrimination, the *McDonnell Douglas* formulation applies. *T & S Services Associates, Inc. v. Crenson*, 666 F.2d 722 (1st Cir.1981). Since we have already found that Oliver failed to meet the burden imposed upon him by *McDonnell Douglas*, the Digital was also entitled to summary judgment on the section 1981 claim.

*Denial of Plaintiff's Motion to Proceed in Forma Pauperis*

We have reviewed the materials Oliver submitted in connection with this motion and find that the district court acted well within its discretion in denying the motion.

*Affirmed.*