**John M.S. CARREIRO,**

v.

**Anthony M. FRANK, in his capacity as Postmaster General of the United State Postal Service.**

**Civ. A. No. 88–2674–Z.**

United States District Court, D. Massachusetts.

April 1, 1992.

---

Durling while on probation. *Commonwealth v. Durling, supra*, 407 Mass. at 121, 551 N.E.2d at 1201 (footnote 8).

---

Bernadette L. Sabra, Sabra Law Offices, Somerset, Mass., for plaintiff.

Gwendolyn R. Tyre, Asst. U.S. Atty., U.S. Attorney's Office, Boston, Mass., for defendant.

## ORDER

ZOBEL, District Judge.

The recommendation is accepted and accordingly, defendant's motion for summary judgment is allowed and plaintiff's cross motion, denied. Judgment may be entered for defendant.

## REPORT AND RECOMMENDATION ON (1) FEDERAL DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 31) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (# 48)

COLLINGS, United States Magistrate Judge.

This case concerns plaintiff John M.S. Carreiro's attempts to obtain employment with the United States Postal Service at the Swansea and Fall River, Massachusetts post offices. He claims that he was not hired because of his religious beliefs which require that he not work on Saturdays. The allegations with respect to attempts to obtain employment at the Fall River post office were dismissed by the District Judge to whom the case was then assigned; in the same order, the claims against various individuals were dismissed. *See* # 28. The present cross-motions for summary judgment concern the Swansea post office.

After hearing, I am convinced that on the facts as taken most favorably to Carreiro, the defendant has shown that even if there were discrimination, Carreiro would not have been hired because he erroneously claimed a five-point veteran's preference. Were it not for being granted the five-point credit, Carreiro would not have been among those interviewed for the two positions at the Swansea post office for which he was interviewed. Further, under the postal service's regulations, the postmaster was required to offer the jobs to one of the persons receiving the three highest scores, and without the five-point preference, Carreiro would not have been among the top three. The persons who were offered the employment and accepted it for the two positions for which Carreiro was interviewed were within the group interviewed and had higher scores than he did after his five-point preference credit was withdrawn.

Accordingly, I shall recommend that summary judgment enter for the federal defendant and that Carreiro's motion for summary judgment be denied. A further elucidation follows.

Carreiro took the Civil Service Examination for the Postal Service on November 23, 1985 for which he received a score of 87.5. Thereafter, he completed an application for employment with the post office; on the application, he claimed and was awarded a five-point veteran's preference. On May 21, 1987, Carreiro received notice from the Swansea post office informing him that his name had been reached on the hiring register and that a part-time flexible clerk position was available. He was interviewed on June 2, 1987. At the interview, Carreiro said that because of his religious beliefs, he could not work on Saturdays;

the postmaster replied that if Carreiro could not work on Saturdays, the postmaster would not hire him.

In August, 1987, Carreiro was notified of a part-time letter carrier position at the Swansea post office. In September, Carreiro was interviewed and said he could not work on Saturdays; he was informed that because he could not work on Saturdays, he would not be hired.

On October 20, 1987, the Postal Service determined that Carreiro had erroneously claimed a veteran's preference and that he was not entitled to a five-point increase in his score. The preference is available only to those who served 180 consecutive days in the military prior to October 14, 1976. *See* Postal Service Handbook EL–311, Article 241.31(d).[1] Since Carreiro did not enter the military until 1978, he was not entitled to the preference. Accordingly, his score was reduced to what it had originally been, i.e., 87.5. Carreiro does not contend that the facts respecting the disallowance of the preference are in dispute. Local Rule 56.1.

As one would expect, the lower score placed Carreiro lower on the hiring register. The question is whether he would have been reached for interview for either of the positions with the lower score, and if so, whether the postmaster could legally have offered him a job if someone with a higher score was ready to accept employment. I find that the answer to both questions is in the negative.

Title 39, C.F.R., Section 211.2(a) provides, in pertinent part that:

> (a) The regulations of the Postal Service consist of:
>> (2) ... the Employment and Labor Relations Manual ... [hereinafter ELM]
>> (3) ... handbooks ... of the Postal Service ... [hereinafter Handbook]

After an examination is given and any veteran's preferences are awarded, the names of all eligible applicants are placed on a "register" which is defined as "... a file of eligibles' names arranged in order of relative standing for appointment consideration." ELM, § 340.[2] When an opening arises which is to be filled from outside the post office, a form denoted a "hiring worksheet" is created. "Names are obtained from the top of the installation's register of eligibles and listed on the form in descending numerical, final rating order." ELM, § 342.11. Although the postmaster may interview as many of the "eligibles" as he chooses, it is provided in the ELM categorically that:

> Selection is made from among the three highest rated available eligibles from the appropriate register for the type of appointment being offered.

ELM, § 342.13.

With respect to the first position for which Carreiro was considered, i.e., the part-time flexible clerk position in Swansea in May, 1987, a worksheet was generated. Carreiro was in fifth position based on his score adjusted upward for the veteran's preference.[3] The undisputed evidence is that if Carreiro's correct score, i.e., 87.5, had been known at the time, Carreiro's name would not have been on the worksheet. A person on the worksheet with a score of 93.5 accepted the position. Hence, even if Carreiro had been provisionally accepted in May, 1987 for the position, his five-point upward adjustment would have been disallowed and his rating and name "lined out with notation made of the reason." Handbook, § 241.63.[4] His name would not have been then placed in a different position on the hiring worksheet, with his new score, he would still be "within reach on the register for consideration in the current hiring action." *Id.* The undisputed evidence is that Carreiro, with a score of 87.5, would not have been "within reach" for the part-time flexible clerk position in May, 1987. Even if there had been no discrimination, Carreiro could not have been hired for the position.

---

**1.** The relevant portions of the Manual are reproduced at Attachment 3 to the Declaration of Robert Miles (#36).

**2.** Attachment 4 to Declaration, Etc. (#38).

**3.** Attachment 9 to Declaration, Etc. (#38).

**4.** Attachment 5 to Declaration, Etc. (#38).

The same analysis holds true for the September, 1987 letter carrier position. *See* Attachment # 12 to Declaration, Etc. (# 38). It appears that two persons with scores of 95.8 and 94.8 respectively accepted the position.

Carreiro would have a point if it were shown that no one on the hiring worksheet with a higher score than him accepted a position. In those circumstances, one could suppose that those with lower ratings, such as Carreiro, might have been reached. But that did not happen. It is clear beyond cavil that when the mistaken veteran's preference was discovered and Carreiro's score was reduced, his name would have been removed from the hiring worksheet and not added. A new hiring worksheet with the names of persons with scores lower than those on the original sheet would not have been generated unless all on the original worksheet were offered a position and none accepted.

While Section 264.42 of the Handbook[5] seems to grant the hiring authority some discretion to determine the number of eligibles to put on the hiring worksheet, this does not change the result. With a score of 87.5, Carreiro would not have been among the number of eligibles which the postmaster chose to place on the hiring worksheets for either position. Section 241.8 of the Handbook cited by Carreiro[6] is inapposite on the facts of this case. That provision applies in the situation in which the person is still "within reach" for employment without the upward adjustment due to the preference. The undisputed fact is that without the adjustment, Carreiro was not "within reach" for either position.

Despite the fact that the defendant has filed an affidavit categorically stating that with a score of 87.5, Carreiro would not have been "within reach", that is, would not have been on the hiring worksheet for either position, Carreiro offers no contrary *evidence.* In his Supplemental Memorandum, Etc. (# 55), he argues that:

In the present case, the Defendant has not provided evidence of the register of eligibles which existed at the time of the Swansea hearings. This would show the number of eligibles who scored between 87.5 and 92.5. The only items produced were the hiring worksheets which only present the arbitrary number of names from the register chosen to be processed by the local postmaster. The hiring worksheet does not reflect the number of applicants who had requested a Swansea position who scored below the arbitrary cutoff point. Thus, the evidence produced by the defendant does not conclusively show that the plaintiff was out of reach on the list.

*Id.* at p. 3.

In a nutshell, this argument seems to be that the defendant has not proven that there were any candidates on the register with scores between his first score of 92.5 and his final score of 87.5 after the preference was disallowed. Thus, he states that in picking the list of five names to go on the hiring worksheet for the May position and the eight names to go on the hiring worksheet for the August position, if Carreiro's 87.5 score would have placed him # 5 on the May list and # 8 on the August list, he would still have been within "reach."

While it is true the defendants have not produced the register from which the hiring worksheets for May and September would have been compiled, there is in the record a sworn statement by Mr. Miles, who is and has been Manager of Employment and Development for the Providence Division of the United States Postal Service; the Providence Division has jurisdiction over the Swansea Post Office. The sworn statement meets the requirements of Rule 56(e), F.R.Civ.P. *See* # 36. In his statement, Mr. Miles states:

38. With respect to the Swansea Post Office, had Plaintiff been selected for either the part-time flexible clerk or part-time flexible carrier positions for which he was interviewed, Plaintiff would have been unable to substantiate his claim to a 5–point veteran's preference. He would,

---

**5.** Attachment # 5 to Transmittal Affidavit, Etc. (# 56).

**6.** Attachment # 2 to Transmittal Affidavit, Etc. (# 56).

therefore, have been excluded from the worksheet for consideration as his 87.5 basic score was lower than the scores of other eligible applicants on the register.

39. In fact, Plaintiff's basic score of 87.5 is such that it would not have warranted a call-in notice and, thus, Plaintiff would not have been interviewed for any of the positions sought. The lowest score for any person interviewed in 1987 for a clerk or carrier position in the three offices selected by Plaintiff was an 89.5.

*Id.* at pp. 9–10.

It is also of note that this issue has been in the case from the beginning. In its Answer (# 7) filed July 13, 1989, the Third Defense reads:

Plaintiff was not in fact eligible for the positions for which he was interviewed in that his placement on the hiring register was based on an erroneous computation of veterans [sic] preference points.

*Id.* at p. 3.

An extended period of discovery has been permitted. In these circumstances, Carreiro cannot oppose summary judgment on mere possibility that there were no candidates for the position who had scores between his initial score of 92.5 and his adjusted score of 87.5.

Under Rule 56, Fed.R.Civ.P., it is incumbent upon the party opposing summary judgment to "set forth specific facts demonstrating that there is a genuine issue for trial." *Oliver v. Digital Equipment Corporation,* 846 F.2d 103, 105 (1 Cir., 1988). As stated by the Supreme Court:

The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although this standard should be applied with more rigor when the factual issue involves a question of motive or intent, the First Circuit has made clear that

Even in such cases, however, we will not refuse to affirm a grant of summary

judgment in favor of the defendant if the plaintiff rests merely upon "unsupported allegations and speculations."

*Lipsett v. University of Puerto Rico,* 864 F.2d 881, 895 (1 Cir., 1988) *quoting Oliver v. Digital Equipment Corporation, supra,* 846 F.2d at 110.

In these circumstances, Carreiro's speculation as expressed in his Supplemental Memorandum, Etc. (# 55) cannot defeat the defendant's motion for summary judgment. Carreiro should have procured all the documents on this issue during discovery, and if they supported his position, he should have submitted an affidavit to that effect accompanied by the documents. He has not done so.

Accordingly, I RECOMMEND that the Federal Defendant's Motion for Summary Judgment (# 31) be ALLOWED on the basis of grounds 4 and 5 of that motion. I FURTHER RECOMMEND that Plaintiff's Motion For Summary Judgment (# 38) be DENIED.

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Clerk within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).