EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

v.

Bernard S. COSTELLO and Steamship
Clerks Union, Local 1066.

Civ. A. No. 91–11572–RGS.

United States District Court,
D. Massachusetts.

March 24, 1994.

James L. Lee, Ann Thacher Anderson, EEOC, N.Y. Dist. Office, New York City, for plaintiff.

Joseph F. McEvoy, Office of Joseph F. McEvoy, Jr., Boston, MA, Thomas F. Birmingham, Feinberg, Charnas & Birmingham, Boston, MA, for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

The Equal Employment Opportunity Commission (EEOC) brought this Complaint [1] alleging that Bernard S. Costello, Inc. (Costello) and Steamship Clerks Union, Local 1066 (Local 1066) violated Title VII of the Civil Rights Act by discriminating against blacks and Hispanics on the basis of race and national origin in the hiring of steamship clerks. Costello ceased doing business in 1990. Pri-

or to that, Costello was engaged in stevedoring operations in the Port of Boston and was a member of the Boston Shipping Association. The Association has a collective bargaining agreement with Local 1066 under which Local 1066 refers steamship clerks for employment to Association members.

The EEOC claims that Local 1066 discriminated by adhering to a membership policy that required new union members to be sponsored by an existing member. The members typically sponsored only family members. The entire membership of Local 1066 is white. The EEOC further alleges that Costello discriminated by relying solely on referrals from Local 1066 which Costello knew or should have known excluded blacks and Hispanics from membership.

This matter is before the court on the EEOC's motion for partial summary judgment [2] and Local 1066's cross motion for summary judgment. Costello did not file an opposition to the EEOC's motion or statement of undisputed facts. For the following reasons, the EEOC's motion is *ALLOWED* in part and Local 1066's motion is *ALLOWED* in part.

### FACTS

The material facts seen in the light most favorable to the defendants are as follows.

The job of steamship clerk entails the checking of cargo against lists provided by shipping companies and consignees during the loading and unloading of cargo vessels. The work requires an ability to read and write and to do simple arithmetic.

From October 1, 1980, until June 30, 1990, Costello conducted stevedoring operations at Moran Terminal, Charlestown. Until June 30, 1990, Costello regularly employed more than 15 employees, including steamship clerks. Costello never hired a black or Hispanic clerk.

From October 1, 1980, until June 30, 1990, Costello was a member of the Boston Ship-

---

1. As permitted by Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), a Commissioner of the EEOC originally filed a charge of discrimination with the EEOC regarding the allegations set out in the Complaint.

2. The EEOC is seeking a determination as to liability. It has not as yet suggested an appropriate remedy.

ping Association. As such, Costello conducted its stevedoring operations in accord with a series of collective bargaining agreements between the Boston Shipping Association and Local 1066. Pursuant to the agreements, Costello hired steamship clerks through a hiring hall maintained by Local 1066. As a member of the Association, Costello agreed not to hire non-union clerks to do steamship work unless Local 1066 failed to supply a sufficient number of qualified personnel. As a consequence, Costello rarely hired non-members of Local 1066.

Local 1066 is a local labor organization affecting commerce. The union has 124 members. There are eighty active members. From October 1, 1980, until up to the time the lawsuit was filed,[3] Local 1066 had a policy requiring that applicants seeking admission (other than injured longshoremen) be sponsored by a member of the union.[4] The sponsored applicants were always members' relatives. Local 1066 has no black or Hispanic members and has never had a black or Hispanic sponsored for membership. No black or Hispanic has even been formally denied admission to Local 1066 or formally denied the opportunity to work as a steamship clerk in the Port of Boston.

### DISCUSSION

Summary judgment is appropriate when, based upon pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op Society,* 3 F.3d 495, 497 (1st Cir.1993). Under the evidentiary framework first developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff has the burden of presenting a prima facie case of discrimination. If accomplished, the burden shifts to the defendants to articulate a legitimate nondiscriminatory reason for their actions.

■■■■ The EEOC alleges in its Complaint that Local 1066 unlawfully restricted its membership on the basis of race by requiring that members be referred by an already admitted union member. The EEOC argues that this policy of membership referral created a disparate and adverse impact on blacks and Hispanics.[5] In a disparate impact case, the plaintiff must show that a "facially neutral employment practice ha[s] a significantly discriminatory impact. If that showing is made, the employer must then demonstrate that 'any given requirement [has] a manifest relationship to the employment in question,' in order to avoid a finding of discrimination." *Connecticut v. Teal,* 457 U.S. 440, 446–47, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982), quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). If the defendant does not meet its burden of articulation, the court should find in favor of the plaintiff.

■■ As evidence of adverse impact, the EEOC relies on the fact that statistically no black or Hispanic has ever been made a member of Local 1066. In *Fudge v. City of Providence Fire Dept.,* 766 F.2d 650, 658 (1st Cir.1985), the First Circuit addressed the issue of statistical evidence in an adverse impact case involving admission tests to a fire fighters' training academy. The test articulated in *Fudge* is applicable to the instant case.

> [In] cases involving a narrow data base, the better approach is for the courts to require a showing that the disparity is statistically significant, or unlikely to have occurred by chance, applying basic statistical tests as the methods of proof.... When statistical tests sufficiently diminish chance as a likely explanation, it can be

3. Although the union closed its membership books in 1986, the policy remained in effect.

4. A review of the record shows that this fact is not in dispute despite defendants' contention otherwise. Defendant relies on the deposition of Thomas Fitzgerald, the union's business agent, for the proposition that not all union members were sponsored by a family member. Mr. Fitzgerald's deposition testimony, however, shows

that in all cases, except one, where he knew how a member had entered the union, it was by family sponsorship. The one exception was the result of a previous lawsuit brought under Title VII alleging gender discrimination.

5. The EEOC also argues that the union's membership policy is a *per se* violation of Title VII. Because I find that the union's policies created an adverse impact, I do not address this issue.

presumed that an apparently substantial difference in pass rates is attributable to discriminatory bias, thus shifting the burden to defendants to show job relatedness. If the probability is sufficiently high that the disparity resulted from chance, the plaintiff must present additional evidence of disproportionate impact in order to establish a prima facie case. The test for chance would determine the competency and validity of exclusively statistical proof in a far more reliable manner than wholly intuitive response. [citations omitted.]

*Id.*

Prior training or specialized skills are not required to perform steamship clerk tasks. As the EEOC pointed out in its Decision after the investigation of the charge, the general population statistics for the relevant Boston area labor market show that blacks comprise 21% of the available labor force and Hispanics 6%.[6] Statistically, the union's membership referral policy has never produced a black or Hispanic member. Chance is not a likely explanation for this result.[7] Plaintiff, therefore, has carried its burden of presenting a prima facie case of discrimination against the union.

■■■ The burden thus shifts to Local 1066 to justify its employment practices. "The explanation defendant provides must be 'clear and reasonably specific.' ... [The] defendant must offer more than vague, general averments of good faith." *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 109 (1st Cir.1988), [citations omitted]. Local

1066, however, has failed to articulate a job related rationale for its membership policy. The purported justification offered by the union is that "[m]ost recently inducted members have joined the [u]nion for non-economic reasons such as continuing a family tradition of membership." This statement is not a rationale for the policy. It is merely an illumination of the motives of those who have had its advantage. It does not explain, much less justify, the nexus between family tradition and the job of steamship clerk, or the union's motivation in attempting to perpetuate that connection. Even if it did, "Title VII case law has from the beginning made clear that nepotistic concerns cannot supersede the nation's paramount goal of economic opportunity for all." *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1303 (9th Cir. 1982).

Inasmuch as defendants have failed to rebut the EEOC's prima facie case of discrimination, the plaintiff is entitled to summary judgment in its favor as to claims alleging that Local 1066 violated Title VII by discriminating on the basis of race and national origin.

■■ In its Complaint, the EEOC also alleged that Local 1066 violated Title VII by failing to make and keep records and file EEO–3 reports as required by Section 709(c) of Title VII, 42 U.S.C. § 2000e–8(c). The EEOC, however, has not produced any material facts to support this claim.[8] Therefore, Local 1066 is entitled to summary judgment in its favor as to these allegations.

---

6. Specific statistics on the racial composition of the steamship clerk industry are not available. There are, however, Census Bureau statistics that merge the transportation industry's employment statistics with similar statistics for public utilities. These show that blacks and Hispanics participate in the labor force as clerical/clerks at a rate of 7% and 1% of the total, respectively.

7. In the *Fudge* case, the plaintiff failed to carry its burden of presenting a prima facie case. The court noted that the plaintiff had failed to submit expert opinion or request judicial notice of written sources to help delineate the role of chance in the statistical proof. In the instant case, this information does not seem necessary. Unlike the *Fudge* statistics, the plaintiff's data is straightforward. For all of the years in question, no blacks or Hispanics were ever admitted.

Moreover, only one referral policy is at issue, unlike *Fudge* where different tests generated different employment statistics. "In any event, fine tuning of statistics" cannot obscure "the glaring absence of minorit[ies]...." The [defendants'] inability to rebut the inference of discrimination [is] not from a misuse of statistics but from "the inexorable zero." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 342 n. 23, 97 S.Ct. 1843, 1858 n. 23, 52 L.Ed.2d 396 (1977).

8. The EEOC did submit facts to support these allegations based on Requests for Admissions to the union that the EEOC sought to have deemed admitted pursuant to Fed.R.Civ. 36(a). Because the court subsequently allowed the union to file its responses late, these facts can no longer be treated as admitted.

The EEOC also alleges that Costello violated Title VII by relying solely on referrals from Local 1066 for steamship clerks when Costello knew or should have known that the union excluded blacks and Hispanics from membership. An employer discriminates if it obtains workers solely from a referral system that excludes members of minority groups. *United States v. Georgia Power,* 474 F.2d 906, 925–26 (5th Cir.1973). "An employer union agreement permitting the employer to discriminate is no defense." *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014 (2nd Cir.1980). Costello has admitted that it relied on Local 1066 to refer steamship clerks for employment and that it has never employed a black or Hispanic as a steamship clerk. The EEOC has carried its burden of proving a prima facie case of discrimination. Costello has not offered a defense. Consequently, the EEOC is entitled to summary judgment in its favor as to the claims in the Complaint alleging that Costello violated Title VII.

### ORDER

For the foregoing reasons, the EEOC's motion for partial summary judgment is *ALLOWED* as to so much of the Complaint as alleges that Local 1066 and Costello violated Title VII by discriminating on the basis of race and national origin. Local 1066's motion for summary judgment is *ALLOWED* as to those claims alleging that Local 1066 violated Title VII by failing to file EEO–3 reports.

SO ORDERED.