USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1786

 JOHN J. BELIVEAU, JR.,
 Petitioner,

 v.

 UNITED STATES DEPARTMENT OF LABOR AND
 NAVAL UNDERSEA WARFARE CENTER,
 Respondents.

 ____________________

 ON PETITION FOR REVIEW OF A FINAL DECISION
 AND ORDER OF THE SECRETARY OF LABOR

 ____________________

 Before

 Boudin, Circuit Judge,

 Aldrich, Senior Circuit Judge,

and Shadur, Senior District Judge.

 _____________________

 Richard E. Condit, with whom Sarah L. Levitt, was on brief,
for petitioner.
 Joanne Royce on brief for Government Accountability Project,
amicus curiae.
 Ford F. Newman, Attorney, with whom Judith E. Kramer, Deputy
Solicitor, Steven J. Mandel, Associate Solicitor, and Paul L.
Frieden, Counsel for Appellate Litigation, U.S. Department of
Labor, were on brief, for respondent U.S. Department of Labor.

 ____________________

 March 10, 1999
 ____________________ SHADUR, Senior District Judge. John Beliveau
("Beliveau") was hired as Environmental Program Manager by the
Naval Undersea Warfare Center ("Navy") in March 1994. In the
course of discharging his duties Beliveau became aware of actual
and suspected violations of the Clean Air Act (42 U.S.C. 7622),
the Safe Drinking Water Act (42 U.S.C. 300j-9(i)), the Resource
Conservation and Recovery Act (42 U.S.C. 6971), the Comprehensive
Environmental Response, Compensation and Liability Act (42 U.S.C.
 9610), the Toxic Substances Control Act (15 U.S.C. 2622) and
the Clean Water Act (33 U.S.C. 1367). After disclosing those
violations to Navy officials and finding that no action was taken,
Beliveau reported his concerns to the United States Environmental
Protection Agency ("EPA").
 EPA began an inspection that resulted in fines being
levied against the Navy. After that investigation the Navy
transferred Beliveau to a position that he claimed had
"substantially less authority and responsibility." Beliveau then
filed a complaint on February 7, 1995 with the Wage and Hour
Division ("Wage & Hour") of the Department of Labor ("Department"),
claiming he had been discriminated and retaliated against for
engaging in behavior protected by the already-listed statutes in
addition to the Occupational Safety and Health Act (29 U.S.C.
 660(c)).
 On June 15, 1995 Beliveau and the Navy entered into a
Memorandum of Agreement and Settlement ("Settlement Agreement"),
and Beliveau withdrew his complaint. Although Wage & Hour's
Assistant District Director sent a letter on that same day
confirming that the parties had reached a settlement and that
Beliveau's complaint had been withdrawn, the Settlement Agreement
had neither been reviewed nor approved by the Secretary of Labor
("Secretary").
 Under the Settlement Agreement Beliveau agreed to
withdraw his complaint, to return all documents related to the Navy
and to resign voluntarily from the Navy in September 1997. Other
provisions prohibited Beliveau from cooperating in any proceedings
against the Navy unless compelled by force of law, from
communicating with anyone regarding the information he had learned
during his employment with the Navy, from publicly disclosing the
terms of the Settlement Agreement, from communicating with current
or former Navy employees without approval by the Navy, from working
for or seeking employment with the Department of Defense or EPA and
from entering any site of his former employer or the Newport Naval
Complex.
 In October 1996 and March 1997 Beliveau filed additional
complaints with Wage & Hour, claiming that the Navy had engaged in
further retaliatory actions and had violated the Settlement
Agreement. Then on April 28, 1997 Beliveau filed a motion with a
Department administrative law judge ("ALJ") to reopen the 1995
complaint, arguing that the Settlement Agreement itself was void
because it had not been approved by Secretary. Because Wage & Hour
had not made any findings and because no request for a hearing
regarding the 1995 complaint had been filed with the Office of
Administrative Law Judges, the ALJ held that he did not have
jurisdiction over the 1995 complaint.
 Ultimately, however, after Beliveau had then refiled his
motion to reopen with Wage & Hour and that motion had been denied
on May 28, 1997, the case was formally assigned to an ALJ for
determination. Beliveau's main argument, that Secretary had
improperly failed to review and approve the Settlement Agreement,
was rejected and his motion for reopening was denied. Department's
Administrative Review Board ("Board") then affirmed that denial,
specifically rejecting Beliveau's argument that the Settlement
Agreement was void due to the lack of express approval by
Secretary.
 Beliveau brought this appeal, seeking to reverse Board's
decision about the necessity of Secretarial review and approval of
settlements. In addition Beliveau asks that the case be remanded
with specific instructions to issue an order voiding the Settlement
Agreement and reopening the case. While we do remand Beliveau's
case to Secretary for review of the Settlement Agreement, we deny
his request for an order mandating Secretary's disapproval of that
Agreement.
 Standard of Review
 Dubois v. United States Dep't of Agric., 102 F.3d 1273,
1284 (1st Cir. 1996), quoting from and citing to 5 U.S.C. 706,
has reconfirmed the general standard for reviewing administrative
agencies' decisions:
 Under the APA [Administrative Procedure
 Act], "[t]he reviewing court shall...hold
 unlawful and set aside agency action,
 findings, and conclusions found to be
 arbitrary, capricious, an abuse of
 discretion, or otherwise not in accordance
 with law." Errors of law are reviewed by
 the court de novo.

That standard applies here.
 Requirement of Secretarial Review
 Whether Secretary has a statutory obligation to review
and approve settlement agreements, such as the one entered into
between whistleblower Beliveau and Navy as his employer, is the
central issue of this appeal. Beliveau argues that the employee
protection provisions in three statutes require Secretary to take
such action: the Toxic Substances Control Act, the Clean Air Act
and the Safe Drinking Water Act. Specifically, Section
2622(b)(2)(A)(which as stated earlier is part of the Toxic
Substances Control Act) provides (emphasis added):
 Upon receipt of a complaint filed under
 paragraph (1), the Secretary shall conduct
 an investigation of the violation alleged
 in the complaint. Within 30 days of the
 receipt of such complaint, the Secretary
 shall complete such investigation and
 shall notify in writing the complainant
 (and any person acting on behalf of the
 complainant) and the person alleged to
 have committed such violation of the
 results of the investigation conducted
 pursuant to this paragraph. Within ninety
 days of the receipt of such complaint the
 Secretary shall, unless the proceeding on
 the complaint is terminated by the
 Secretary on the basis of a settlement
 entered into by the Secretary and the
 person alleged to have committed such
 violation, issue an order either providing
 the relief prescribed by subparagraph (B)
 or denying the complaint. An order of the
 Secretary shall be made on the record
 after notice and opportunity for agency
 hearing. The Secretary may not enter into
 a settlement terminating a proceeding on a
 complaint without the participation and
 consent of the complainant.

 According to Board (which exercises Secretary's powers in
whistleblower cases--see Secretary's Order 2-96, 61 Fed. Reg.
19,978 (1996)), that provision requires Secretary to review
settlements that have been reached by the disputants only after a
request for a hearing has been filed with an ALJ. As Board would
have it, before such a request is made (for example, during the
investigative stage of a complaint) no "proceeding" is pending and
secretarial review is not required. Furthermore, Secretary argues
here that "[t]his reflects a reasonable interpretation of the
statutory term 'proceeding,' an interpretation which is entitled to
Chevron deference from this Court."
 But Chevron U.S.A. Inc. v. Natural Resources Defense
Council, Inc., 467 U.S. 837, 843 (1983) teaches that courts are to
grant such deference only where "the statute is silent or ambiguous
with respect to the specific issue" and "the agency's answer is
based on a permissible construction of the statute." No deference
is called for where "the intent of Congress is clear" (id. at 842),
as is the case with the statutes at issue here--in that event the
clear congressional intent "is the end of the matter" (id.). As we
have explained in Arnold v. United Parcel Serv., Inc., 136 F.3d
854, 857-58 (1st Cir. 1998), quoting Caminetti v. United States,
242 U.S. 470, 485 (1917):
 If the language of a statute "is plain and
 admits of no more than one meaning" and
 "if the law is within the constitutional
 authority of the law-making body which
 passed it," then "the duty of
 interpretation does not arise" and "the
 sole function of the courts is to enforce
 the statute according to its terms."

 Secretary's reading of the statutory provision, under
which no "proceeding on the complaint" exists until it reaches the
formal stage that looks to an ALJ hearing, does violence to both
the structure and the language of the statute. To the contrary,
the initial (and undefined) use of the word "proceeding" in the
emphasized statutory language quoted earlier, when coupled with the
statutory directives and timetables in both that and the preceding
sentence, compel the conclusion that "the proceeding on the
complaint" has begun when it first reaches Secretary, triggering
her obligation to conduct an investigation. That normal meaning,
rather than any strained and formalistic reading, of the word
"proceeding" in the context of the statute is the only reasonable
one called for by the plain language of the employee protection
provision.
 Indeed, that identical reading has been given to the
totally parallel language of the Energy Reorganization Act (42
U.S.C. 5851) by the Fifth Circuit in Macktal v. Secretary of
Labor, 923 F.2d 1150, 1153 (5th Cir. 1991)(emphasis added):
 Once a complaint is filed, the statutory
 language authorizes only three options:
 (1) an order granting relief; (2) an order
 denying relief; or (3) a consensual
 settlement involving all three parties.

And as Macktal, 923 F.2d at 1154 (footnote omitted) went on to
observe:
 The words of the statute require the
 Secretary to take one of three actions
 once a complaint is filed. The statute
 makes no exception for cases in which the
 complainant and the company reached an
 independent settlement.

Although to be sure Macktal addressed a somewhat different question
from that posed to us--what was at issue there was whether
Secretary can alter a negotiated settlement agreement without the
parties' consent--the Fifth Circuit's reading of the exclusivity of
the three avenues that are available to Secretary under the
employee protection provision, once a complaint has been filed,
applies here with equal force.
 Indeed, what may well be viewed as the most powerful
evidence of the statute's nonambiguity and of what we have found to
be its plain meaning is internal to the statute itself. Here is
Section 2622(a), a portion of the same statutory section that
immediately precedes the Toxic Substances Control Act provision
that we are considering:
 No employer may discharge any employee or
 otherwise discriminate against any
 employee with respect to the employee's
 compensation, terms, conditions, or
 privileges of employment because the
 employee (or any person acting pursuant to
 a request of the employee) has--
 (1) commenced, caused to be commenced,
 or is about to commence or cause to be
 commenced a proceeding under this
 chapter;

 (2) testified or is about to testify
 in any such proceeding; or

 (3) assisted or participated or is
 about to assist or participate in any
 manner in such a proceeding or in any
 other action to carry out the purposes
 of this chapter.

 It could not rationally be contended, of course, that the
"proceeding" referred to in Section 2622(a)(1) as being "commenced"
by an employee comes into existence only when the employee's
complaint reaches the stage at which--following Secretary's
investigation of that complaint--a request for a hearing has been
filed with an ALJ. If that were the case, the complaining employee
would not be protected against the swiftest acts of retaliation by
the employer--for example, a discharge or other discriminatory
action taken hard on the heels of the employee's filing of the
complaint (which, under each statute involved here (see, e.g.,
Section 2622(b)(1)) expressly requires Secretary to notify the
employer of that filing). Any such reading would be particularly
absurd in light of the uniform holdings in cases that involve
claimed retaliatory actions by employers that temporal proximity is
an important component (in fact, often the most persuasive factor)
in the employee's required proof of a causal relationship between
his or her statutorily protected conduct and the employer's
asserted retaliation (see, e.g., Wyatt v. City of Boston, 35 F.3d
13, 16 (1st Cir. 1994) (per curiam) and Oliver v. Digital Equip.
Corp., 846 F.2d 103, 110 (1st Cir. 1988), each of which confirms
that principle in the most frequently encountered context of claims
of employment discrimination).
 Secretary has expressly recognized the common sense
meaning of "proceeding" in the directly relevant context of
retaliatory action by an employer in a whistleblower situation. In
Kansas Gas & Elec. Co. v. Brock, 780 F.2d 1505, 1511 (10th Cir.
1985) the accused employer was arguing against the notion that an
employee's internal complaints to the employer, as contrasted with
the employee's later contact with governmental authorities, could
constitute a "complaint" for statutory purposes so as to trigger
the Energy Reorganization Act's antiretaliatory protection. 
Secretary argued otherwise, characterizing such an internal
communication as a "complaint and--significantly for present
purposes--going on to stake out this position (id.):
 Further, the Secretary asserts that the
 filing of a "Complaint, will initiate a
 proceeding."

Yet Secretary would now have it that the identical word
"proceeding" has totally different meanings in two successive
subsections of the same statutory section: Even though Secretary
has thus urged that a "proceeding" is initiated by the filing of a
complaint for purposes of the first subsection, she contends here
that the "proceeding" somehow does not begin until the ALJ stage is
reached for purposes of the second subsection. Though we may
recognize Emerson's aphorism that "A foolish consistency is the
hobgoblin of little minds, adored by little statesmen and
philosophers and divines," nothing compels us to accept such
foolish inconsistency--and we do not.
 Moreover, Secretary has elsewhere confirmed the strong
policy argument for requiring review and approval of employee
settlement agreements at any stage, not merely the one now plumped
for by Secretary. Hoffman v. Fuel Econ. Contracting, 97-ERA-33
(Sec'y Order Denying Request to Reconsider, August 4, 1989)
stated:
 The Department of Labor does not simply
 provide a forum for private parties to
 litigate their private employment
 discrimination suits. Protected
 whistleblowing under the ERA may expose
 not just private harms but health and
 safety hazards to the public. The
 Secretary represents the public interest
 by assuring that settlements adequately
 protect whistleblowers.

That order reaffirmed Secretary's critical role in determining that
a settlement is "just and reasonable and in the public interest,"
a role that is equally important throughout every stage of the
process that begins with the filing of a complaint.
 What we have said to this point calls for a remand to
Secretary for the statutorily required review of the Settlement
Agreement. But nothing in the statute or in the posture of the
case allows (or calls for) our preemption of Secretary's role in
conducting that review--that would be the effect of our granting
Beliveau's request for a direction to void that Agreement. 
Secretary's assertion on this appeal of the legal position that no
Secretarial review was required sends no signal that the review,
when ordered as it now has been, cannot be conducted appropriately
by Secretary's taking all relevant factors into account.
 Conclusion
 Board's decision is REVERSED. This action is REMANDED to
Secretary for her review of the Settlement Agreement, to be
followed by such further proceedings as may be called for on
completion of that review.