**Inés CORUJO–MARTI, Plaintiff,**

v.

**TRIPLE–S, INC., Defendant.**

**Civil No. 05–2070 (ADC).**

United States District Court,
D. Puerto Rico.

Sept. 27, 2007.

---

Enrique J. Mendoza–Mendez, Mendoza Law Office, San Juan, PR, for Plaintiff.

Pedro J. Manzano–Yates, Enrique R. Padro, Rosa M. Mendez–Santoni, Pedro J.

Manzano–Yates, San Juan, PR, for Defendant.

## OPINION AND ORDER

AIDA M. DELGADO–COLON, District Judge.

Plaintiff, Inés Corujo–Martí ("Plaintiff") filed this action under the Americans With Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12112(a), against her employer, Triple–S, Inc. ("Triple–S" or "Defendant"), alleging discrimination and harassment on account of her epilepsy condition. (**Docket No. 1**). In addition, Plaintiff alleges that she was wrongfully terminated in retaliation for filing a charge with Puerto Rico's Anti–Discrimination Unit ("ADU") and having availed herself of benefits under the Family and Medical Leave Act ("FMLA"). *Id.* Lastly, Plaintiff includes supplemental state law claims based upon Puerto Rico's anti-discrimination, retaliation, disability and general negligence statutes. *See* 1 L.P.R.A. § 501, et seq.; 11 L.P.R.A. § 201 et seq.; 29 L.P.R.A. § 194, et seq.; 31 L.P.R.A. § 5142.

Now before the Court is Plaintiff's objection (**Docket No. 48**) to the Report and Recommendation ("R & R") issued by Magistrate–Judge Camille Vélez–Rivé ("Magistrate Judge") on February 28, 2007 (**Docket No. 46**), recommending granting Defendant's Motion for Summary Judgment. (**Docket No. 13**). Defendant opposes Plaintiff's objection. (**Docket No. 49**). After reviewing the pleadings, R & R and considering Plaintiff's objection as set forth below (**Docket Nos. 13, 20, 23, 24, 32, 35, 35, 36, 40**), the Court adopts the Report and Recommendation, in part and grants Defendant's Motion for Summary Judgment.

## I. Standard of Review for Objections to a Report and Recommendation

A District Court may refer pending motions to a Magistrate–Judge for a

Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party adversely affected by the recommendation issued may file written objections within ten days of being served with the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review by the district court and the court of appeals. *See Santiago v. Canon U.S.A. Inc.,* 138 F.3d 1, 4 (1st Cir.1998); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992). Similarly, a party objecting to a report and recommendation is "not entitled to a de novo review of an argument never raised" before the magistrate. *See Borden v. Sec. of Health and Human Svcs.,* 836 F.2d 4, 6 (1st Cir.1987).

In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(a)(b)(1). *See Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodríguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). Hence, the Court may accept those parts of the report and recommendation to which the Plaintiff does not object. *See Hernández–Mejías v. General Elec.,* 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing *LaCedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp.2d 114, 125–126 (D.R.I.2004)). Lastly, arguments or available evidence not raised before the magistrate-judge are deemed waived. *See Guzmán–Ruíz v. Hernández–Colón,* 406 F.3d 31, 36 (1st Cir.2005); *Borden v. Sec. of Health & Human Svc.,* 836 F.2d 4, 6 (1st Cir.1987).

## II. Plaintiff's Objection

As a threshold matter, Plaintiff's objection does not address the substance of the R & R, but rather is a condensed version of her opposition brief filed on September 25, 2006. As required by statute and local rule, a district court must engage in a *de novo* review "of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636; P.R. Loc. Rule 72(c).[1] In *Sackall v. Heckler,* the District Court of Rhode Island succinctly set forth the purpose of this rule:

> "[I]f the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the latter's Fed. R.Civ.P. 11 obligations, can in good conscience complain to the district judge that an objection to a particular finding or recommendation is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...."

104 F.R.D. 401, 402–03 (D.R.I.1984)(internal quotations omitted).

With the exception of the introduction on page one, every substantive paragraph of Plaintiff's objection is copied verbatim from her opposition. *See* **Dockets No. 48 & 23.** Based upon on this failure to prop-

---

**1.** Local Rule 72(c) requires a party objecting to the report and recommendation of a Magistrate–Judge to "specifically identify the por- tions of the proposed findings and recommendations to which objection is made and the basis for such objection."

erly object to the R & R, the Court does not engage in a duplicitous *de novo* review of any portion of the Magistrate–Judge's determinations and findings. *See Betancourt v. Ace Ins. Co.*, 313 F.Supp.2d 32, 35 (D.P.R.2004); *Monfort–Rodríguez v. Hernández*, 286 F.Supp.2d 119, 121 (D.P.R. 2003); *Agront v. Chater*, Civ. No. 94–2461, 1996 WL 148619 (D.P.R. March 22, 1996). Instead, after reviewing the record, R & R and pleadings in their entirety, the Court takes a moment to make two brief observations.

First, with respect to the issue of whether Plaintiff was a qualified individual with a disability under the ADA by virtue of being substantially limited in the major life activity of sleeping, the Magistrate–Judge found that the affidavit of Dr. Sánchez–Longo submitted by Plaintiff in support thereof, was untimely and irrelevant inasmuch as it contained generalized statements about epileptic patients in general, not Plaintiff. *See* **Docket No. 46** at 16–17. After reviewing the affidavit, the Court finds that although paragraph 5 refers to epileptic patients in general, paragraphs 6–12 may be construed as referring to the Plaintiff, specifically. *See* **Docket No. 40–2**. Nevertheless, even assuming that a triable issue of fact exists as to whether Plaintiff was a qualified individual under the ADA, the Court concurs with the remainder of the Magistrate–Judge's determinations that Plaintiff did not follow

through in the interactive process with her employer and more importantly, otherwise failed to establish a claim of disability discrimination. *See* **Docket No. 46** at 22, 32.

■ Second, with respect to the retaliation claim under the ADA, the Magistrate–Judge found that Plaintiff had failed to establish that Defendant's proffered non discriminatory reason for terminating Plaintiff was pretextual. *See* **Docket No. 46 at 29**. Specifically, Defendant proffered that Plaintiff's termination was based on her failure to return to work before the expiration of the one year reserve period established by Puerto Rico's short term non-occupational leave statute ("S.I.N.O.T"). *See* 11 L.P.R.A. § 203(q). In support, Defendant avers that Plaintiff's return to work on February 18, 2005 was over a year from the onset of her disability which took place on February 17, 2004. In turn, Plaintiff claims this proffered reason was pretextual inasmuch as it ignores, among other things, state law statutes governing the computation of time, the fact that 2004 was a leap year and, in any event, dismissal on these proffered grounds were completely discretionary. After reviewing the arguments relating to whether Plaintiff returned to work within a year, The Court concurs with the Magistrate–Judge's determination that Plaintiff reported for work after the expiration of a year.[2] More importantly, the

---

**2.** Even accepting Plaintiff's arguments about the calculation of days and presence of a leap year, Plaintiff was still one day late in returning to work. The time between Plaintiff's disability of February 17, 2004 and when she returned to work on February 18, 2004 was 367 days. Hence, even providing her the benefit of the 366 days contained in a leap year and not counting the day she went out on disability, she still does not fall within the one year time period proscribed by S.I.N.O.T. *See* 1 L.P.R.A. § 72 ("The time in which any act provided by law is to be done is computed by excluding the first day, and including the

last ..."); *Salamanca v. American Airlines Inc.*, 920 F.Supp. 24, 26 n. 1 (D.P.R.1996)(noting in relation to a prescription period that the Puerto Rico Supreme Court has held that a year should be considered to have three hundred and sixty-five (365) days unless the period in question encompasses a leap year in the month of February, in that case a year consists of tree hundred and sixty-six (366) days.) (citing *Escalera v. Andino*, 76 P.R. Dec. 268, 271 (1954)); Excerpt of Defendant's Policy Manual, Pltf's Ex. 18. *See also* 11 L.P.R.A. § 201 (providing

Court also concurs with the determination in the R & R that Plaintiff failed to establish that the proffered justification for her termination was a pretext masking an improper motive. *See Zapata–Matos v. Reckitt & Coleman, Inc.*, 277 F.3d 40, 45 (1st Cir.2002) (noting that the ultimate determination is not whether the employer's proffered reason was false, but rather whether discrimination was the cause of the termination).

With the exception of the foregoing, the Court's review of the record, pleadings and R & R leads it to concur with and adopt the Magistrate–Judge's findings that Plaintiff has failed to establish a *prima face* case of discrimination, hostile work environment and retaliation in connection with her disability under federal law. The Court also adopts the recommendation not to exercise supplemental jurisdiction over the state law claims.

## IV. Conclusion

For the reasons set forth above, the Court hereby **ADOPTS**, in part, the Report and Recommendation (**Docket No. 46**), and **GRANTS** Defendant's Motion For Summary Judgment (**Docket No. 13**). Plaintiff's federal claims are hereby dismissed, with prejudice, while Plaintiff's supplemental state law claims are dismissed, without prejudice. Judgment to enter accordingly.

**SO ORDERED.**

## *REPORT AND RECOMMENDATION*

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

Plaintiff Inés Corujo ("Corujo") seeks redress in this case for conduct in the

workplace which she alleges constituted discrimination on account of her alleged disability under the "Americans with Disabilities Act of 1991", 42 U.S.C. § 12112(a) ("ADA"). Specifically, Corujo claims that Triple–S failed to accommodate her condition of epilepsy, that she was harassed due to her condition, and that she was terminated on account of being an epileptic. Corujo also alleges that she was terminated from her employment at Triple–S as retaliation for having filed a charge in Puerto Rico's Anti–Discrimination Unit ("ADU") and for having availed herself of the "Family and Medical Leave Act" ("FMLA") benefits.

Defendant Triple–S, Inc.'s ("Triple–S") filed a Motion for Summary Judgment (Docket No. 13), requesting the dismissal of the claims brought forth by plaintiff Corujo on the following grounds: 1) Corujo fails to make a *prima facie* case of disability discrimination or to state a failure-to-accommodate claim because she is not a "disabled" person within the meaning of the ADA; 2) Corujo's failure to collaborate during the interactive process estopped her failure-to-accommodate claim; 3) Corujo failed to establish a harassment claim under the ADA; and 4) Triple–S' actions were not motivated by Corujo's condition or in retaliation for having filed a charge in the ADU, but by legitimate business reasons, which Corujo cannot prove to be a pretext.

Plaintiff Corujo's opposition, defendant's Reply and plaintiff's Sur–Reply were also filed (Docket Nos. 24, 32, and 36). These motions were referred to this Magistrate Judge for report and recommendation. (Docket Nos. 44, 45).

that the chapter regarding S.I.N.O.T. benefits "shall be liberally construed to accomplish its purpose of paying compensation to workmen for the loss of wages as a result of disability due to illness or accident not connected with employment.").

After careful review of all the evidence and material facts, and the discussion hereinafter, this Magistrate Judge recommends that defendant Triple–S' Motion for Summary Judgment be **GRANTED.**

### FACTUAL BACKGROUND

The following relevant facts are undisputed:

1. Corujo began to work for Triple–S in 1981 in the Claims Department. She eventually was transferred to the Client–Service Department. As part of Corujo's duties, she received correspondence from Triple–S's clients, analyzed the contents and, depending on the subject matter, processed the correspondence to the appropriate departments in the company. Mainly, Corujo was responsible for addressing the clients' claims and petitions with regards to their insurance policies. *Plaintiff's Uncontested at 1–2; Deft's Uncontested at 1–2.*

2. Dr. Luis P. Sánchez Longo ("Dr. Sánchez Longo"), neurologist, diagnosed Corujo with epilepsy. As a result of Corujo's condition, she experiences seizures and what she describes as episodes of "absence" in which she looses conscience for a short period of time. The seizures occur mainly at night and they last approximately from one (1) to five (5) minutes. Throughout Corujo's life, she has had approximately five (5) seizures during the daytime. The last time that Corujo suffered from a seizure during the daytime was on September 11, 2001. *Id.* at 3–3.1–3.2; *Deft's Uncontested at 3.*

3. When Triple–S recruited Corujo, she already had the condition of epilepsy, and Triple–S was aware of her condition. *Plaintiff's Uncontested at 4; Deft's at 4.*

4. Corujo is able to continue working as usual after the "absence" episode ends. Corujo does not need to leave work after the "absence" episode occurs. According to Corujo, her condition does hot impede or render her incapable of performing every duty and responsibility related to her position in Triple–S. In sum, Corujo admits that she is not limited in the activity of working. *Plaintiff's Uncontested at 6; Deft's Uncontested at 6.*

5. As to other life activities, Corujo admitted that she is not limited in the activity of driving, taking care of herself, bathing, cooking, entertaining and dancing. Corujo can perform every usual and normal activity in life. According to Corujo, the only impact that her condition has in her life activities is that she has to take medications to prevent seizures, and the fact that she feels much pressure when she senses that she is about to have a seizure. *Plaintiff's Uncontested at 7; Deft's Uncontested at 7–9.*

6. On October 9, 2003, Corujo requested from Triple–S a reasonable accommodation based on her epileptic condition. Corujo made the request through a letter signed by her neurologist, Dr. Sanchez Longo, dated September 29, 2003. On October 9, 2003, Triple–S' Human Resources Division received the letter. Dr. Sanchez Longo requested that Corujo be granted an accommodation so that she could be less anxious and reduce the possibility of epileptic episodes. *Plaintiff's Uncontested at 10; Deft's Uncontested at 10.*

7. According to Corujo, her request for a reasonable accommodation, based on Dr. Sánchez Longo's letter of September 29, 2003, was intended to improve her condition, not to allow her to perform her job. *Deft's Uncontested at 11, Exhibit 1, Corujo's depo. P. 118.*

8. On October 9, 2003, Triple–S also received a letter from Dr. Sánchez Longo in which he requested a copy of Corujo's job description so that he could advise Triple–S on Corujo's request for reason-

able accommodation. Dr. Sanchez Longo's letter requesting a reasonable accommodation stated that her condition was caused by her work. Accordingly, Triple–S executed the Employer Report for the Puerto Rico State Insurance Fund in order for Corujo to receive the worker's compensation benefits. *Plaintiff's Uncontested at 12; Deft's Uncontested at 12–13; Exhibit 1, Corujo's depo. P. 118; Exhibit III, letter 9–29–2003.*

9. On October 10, 2003, in response to one of Dr. Sánchez Longo's letters, Arturo De Lahongrais (from Triple–S's Human Resources Department) sent Dr. Sanchez Longo a copy of Corujo's job description. Dr. Sánchez Longo received Triple–S' letter of October 10, 2003. Corujo also received copy of the letter sent by Arturo De Lahongrais to Dr. Sanchez Longo. Despite its prompt reply to Dr. Sanchez Longo, Triple–S never received a response or recommendation from Dr. Sánchez Longo on how to proceed with the accommodation. *Plaintiff's Uncontested at 14; Deft's Uncontested 14; Exhibit 1, Corujo's depo. pp. 121–122.*

10. On October 15, 2003, Triple–S gave Corujo a copy of Triple–S' "Policy Regarding the Disclosure of Medical Information Compiled by the Dispensary" (*Politico Sobre la Divulgación de Información Médica Recopilada por el Dispensario* ) (hereinafter "Policy") to further allow the company to engage in an interactive process to offer a reasonable accommodation to Corujo. Corujo signed the Policy, and authorized Triple–S to obtain an disclose information related to Corujo's health. On the same date that Corujo signed the disclosure consent form, Corujo revoked the authorization thus, impeding Triple–S' dispensary from obtaining and disclosing her medical information to the Department of Human Resources. *Plaintiff's Uncontested at 16–17; Deft's Uncontested at 16–17, Exhibit 1 pp. 125–126; Exhibit VI.*

11. On October 22, 2003, Dr. Wanda Berríos ("Dr.Berrios"), Triple–S' General Physician in charge of the Dispensary, sent a letter to Corujo in which she explained that Corujo's repeal of the authorization for the Dispensary to disclose her medical information impeded the participation of Triple–S' Dispensary in an interactive process related to the request for reasonable accommodation. Corujo acknowledged receipt of the letter. *Plaintiff's Uncontested at 18.1; Deft's Uncontested at 18, Exhibit 1, Corujo's depo. p. 129; Exhibit VII, letter 10–22–2003.*

12. Corujo answered Dr. Berríos' letter, but only with regards to Dr. Berríos' statements as to the medical certificates needed to continue providing Corujo with a reserved parking area next to the building. This was an accommodation that had been granted to Corujo, but unrelated to her epilepsy. In her response, Corujo did not address Dr. Berríos' statements regarding Corujo's annulment of the authorization for disclosure of medical information. *Plaintiff's Uncontested at 19.1; Deft's Uncontested at 19, Exhibit DC.*

13. During Corujo's tenure at Triple–S, she claims she was subjected to harassment because of her condition. The basis for her harassment claim is that there was an attempt to "mistreat" her; a person told her that she was a "moron" (*morona* ); the people in the Client–Service Department did not "help" her; Corujo felt pressure from her supervisor when: 1) once Corujo intended to give some information to a co-worker, but her supervisor told her that she could not give the information to the co-worker until she finished her work, specifically, her cases; 2) on two (2) occasions, Corujo's supervisor allegedly told her that she typed too slow and that, therefore, she could not type letters be-

cause she would slow the production, and that the company had other purposes with regards to Corujo; and 3) on one (1) occasion, a "word processor" employee told Corujo that she had to inform the Human Resources Department everything related to her. Corujo also claims that she received a substantial amount of e-mails, which distracted her attention from work and that she was asked if she was managing well her cases. *Plaintiff's Undisputed at 20; Deft's Undisputed at 20, Exhibit 1, pp. 64–68, 81–83.*

14. Corujo testified that the persons who mistreated her were: Carlos Navas, Wanda Rivera, Nayda G. Cruz and Arturo De Lahongrais. As to Carlos Navas, Corujo stated that on several occasions he told her that she should remember that he had power and that, therefore, she had to behave well. As to Wanda Rivera, Corujo alleged that she held a meeting with Corujo and when she became aware that Corujo was accompanied by a union delegate, Wanda Rivera told Corujo that she was going to look for a person to represent her and accompany her during the meeting. Corujo also stated that a memorandum which summarized the events during the meeting did not reflect the real content of the same. As to Nayda G. Cruz, Corujo stated, upon being denied authorization to begin work at 7:00 A.M., Corujo told Nayda G. Cruz that Carlos Navas and Nivea López were also starting to work at 7:00 A.M., and Nayda G. Cruz told Corujo that was not her (Corujo's) problem. As to Arturo De Lahongrais, Corujo claims that he informed the manager, the supervisor and the Vicepresident of Corujo's area, of the information that Corujo trusted him with regarding her complaints of the alleged harassment. *Plaintiff's Undisputed at 22; Deft's Undisputed at 22, Exhibit 1, Corujo's depo. pp. 99–101.*

15. Corujo identified Nivea López and Carlos Navas as the persons who called her a "moron". However, Corujo testified that other persons complained of the treatment of Nivea López and Carlos Navas. With the exception of one person, Corujo does not know if the other persons who complained of the treatment of Nivea López and Carlos Navas had any physical or mental condition. *Plaintiff's Undisputed at 23; Deft's Undisputed 23, Exhibit 1, Corujo's depo. pp. 89–90.*

16. As to Corujo's claim that people did not help her, she admitted that she does not know the reason why they refused to do so. As to calling Corujo a "moron," Corujo admitted that she does not know why Nivea López and Carlos Navas made such comment As to Carlos Navas, Wanda Rivera, Nayda G. Cruz and Arturo De Lahongrais, Corujo admitted that she does not know the reason why they mistreated her. As to the comment by Corujo's supervisor that she was too slow and that the Company had other purposes "for her," Corujo admitted she does not know the reason why her supervisor made this comment. As to Corujo's allegation that the "word processing" employee told her she had to inform the Human Resources Division about everything related to Corujo, Corujo admitted she does not know the reason why the employee made the comment. With regards to the e-mails, Corujo's complaint is that these distracted her from work. However, Corujo admitted that the e-mails were not derogatory or offensive. *Plaintiff's Undisputed at 24–29; Deft's Undisputed at 24–29, Exhibit 1, Corujo's depo. pp. 102–103, 109, 111.*

17. As of December 3, 2003, Corujo had a backload of one hundred (100) cases which were pending to be processed. On that date, Wanda Rivera, Supervisor at Triple–S's Client–Service Department, met with Corujo to discuss and prepare a plan

for the one hundred (100) pending cases. During the meeting, Wanda Rivera told Corujo she would not be assigned additional cases during the next fifteen (15) working days following December 3, 2003 to allow Corujo to conclude work on the pending cases before Corujo's scheduled departure for vacation leave on December 26, 2003. Wanda Rivera stated during the meeting that Triple–S was making a special concession to Corujo because the usual practice in the company was not to assign additional cases in the two (2) to five (5) working days before a vacation leave. Wanda Rivera also stated that on December 23, 2003 she would evaluate the status of the one hundred (100) delayed cases and determine if Corujo would be allowed to take her vacation leave on December 26, 2003, as Corujo had requested. *Plaintiff's Undisputed at 30; Deft's Undisputed at 30, Exhibit X.*

18. On December 23, 2003, Nayda G. Cruz, Manager of the Client–Service Department, met with Corujo to evaluate the status of the one hundred (100) pending cases and the issues discussed in the December 3rd, 2003 meeting. Corujo had yet to conclude twenty nine (29) of the pending cases. As a result, Corujo was not allowed to take her vacation leave starting on December 26, 2003. Corujo was granted another extension of time until January 2, 2004 to conclude the twenty nine (29) pending cases. Corujo was not to be assigned additional cases during that period of time. *Plaintiff's Undisputed at 31; Deft's Undisputed at 31, Exhibit XI.*

19. On January 9, 2004, Corujo completed the pending cases. Therefore, it took twenty two (22) working days for Corujo to complete the one hundred (100) pending cases. She completed an average of 4.5 cases per day, an amount substantially less than Triple–S' standard of eight (8) cases per day. *Plaintiff's Undisputed*

*at 32; Deft's Undisputed at 32, Exhibit XII.*

20. Corujo took her vacation leave after she completed the pending cases. On February 17, 2004, she took a short-term non-occupational leave (S.I.N.O.T.). *Plaintiff's Undisputed at 33; Deft's Undisputed at 33, Exhibit I, Corujo's depo. p. 146.*

21. On February 20, 2004, Marna Aguiar, Triple–S's Manager of Industrial Relations, reminded Corujo that Triple–S never received a response from Dr. Sanchez Longo as to his input to accommodate Corujo's condition and reiterated the need for Corujo to authorize Triple–S's Dispensary to obtain and disclose her medical information. *Plaintiff's Undisputed at 34; Deft's Undisputed at 34, Exhibit XIII.*

22. On February 17, 2005, Corujo was released from S.I.N.O.T. and she reported to Triple–S on February 18, 2005. As of February 18, 2005, more than three hundred sixty five (365) days elapsed since Corujo began her S.I.N.O.T. leave on February 17, 2004. Since Corujo had exhausted the S.I.N.O.T. statutory employment reserve, Corujo was not allowed to return to work and was terminated from her employment with Triple–S on February 18, 2005. *Plaintiff's Undisputed 35; Deft's Undisputed at 35; Exhibit 1, Corujo's depo. p. 146; Exhibit XIV, letter 3–2–2005.*

23. On February 24, 2004, Corujo filed a charge in the ADU against Triple–S alleging that Triple–S had failed to reasonably accommodate her condition, that she had been discriminated against on account of her disability, and she was subjected to a hostile work environment *Plaintiff's Undisputed at 36; Deft's Undisputed at 36, Exhibit 1, Corujo's depo. p. 152.*

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of sum-

mary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir. 1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack,* 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that [it] can produce the quantum of evidence [necessary] to enable [it] to reach the jury with [its] claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P.

56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury of judge to resolve the parties' differing versions of truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## LEGAL ANALYSIS

### A. *Prima Facie* Case of Disability Discrimination under the ADA.

The ADA proscribes discrimination against a qualified individual with a disability because of the disability of such individual. The statute's protection extends to all employment practices such as job application procedures, hiring, advancement, firing, compensation, job training, and other terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a). *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The ADA also requires an employer to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual. 42 U.S.C. § 12112(b)(3)-(4).

Under the ADA, a "disability" is a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment. 42 U.S.C. § 12102(2). Protection by the ADA is granted only to individuals who meet one or more of the above mentioned definitions. *Sutton,* 527 U.S. at 471, 119 S.Ct. 2139; *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

In the absence of direct evidence of discrimination, courts apply the burden shifting framework initially in *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The framework was also extended to claims of disability discrimination arising under the ADA. *Higgins v. New Balance Ath. Shoe, Inc.,* 194 F.3d 252 (1st Cir.1999); *Dichner v. Liberty Travel,* 141 F.3d 24, 29–30 (1st Cir.1998).

The *McDonnell Douglas* framework initially requires the plaintiff to establish a *prima facie* case of disability discrimination. To establish a *prima facie* case of discrimination, a plaintiff must prove: 1) he/she was "disabled" within the meaning of the ADA; 2) he/she was able to perform the essential functions of her job and qualified for the position, with or without reasonable accommodation; 3) he/she was discharged or adversely affected, in whole or in part, because of her disability; and 4) that a non-disabled person replaced her. *See Phelps v. Optima Health Inc.,* 251 F.3d 21 (1st Cir.2001).

Once plaintiff establishes the elements of the *prima facie* case, the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. When the defendant satisfies its burden of production, the plaintiff must prove by a preponderance of the evidence the defendant's proffered reasons were not the true reasons, but merely a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.*

The ADA defines a "qualified individual with a disability" as an individual with a "disability" who, with or without a reasonable accommodation, can perform the essential functions of the job. The corner-stone of the definition, and the *sine qua non* requirement for ADA protection, is whether the individual has a "disability" as defined by the ADA. The statute lists three alternative definitions of "disability," of which a claimant must, at least, satisfy one: (a) a physical or mental impairment which substantially limits one or more of a person's major life activities; (b) a record of having such impairment; or (c) if the individual is being regarded as having such impairment. *See* 42 U.S.C. § 12102(2); *Sutton,* 527 U.S. at 471, 119 S.Ct. 2139; *Albertson's,* 527 U.S. at 555, 119 S.Ct. 2162; *Bragdon,* 524 U.S. at 624, 118 S.Ct. 2196.

Common to the three definitions of disability is the requirement that the physical or mental impairment must "substantially limit one or more of the person's major life activities." *See Lessard v. Osram Sylvania Inc.,* 175 F.3d 193, 199 (1st Cir.1999).

The EEOC regulations define the term "substantially limits" as the (1) inability to perform a major life activity, or (2) a severe restriction on the ability to perform a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1). Three factors to consider in determining whether a person's impairment substantially limits a life activity are: (1) the nature and severity of the impairment, (2) how long it will last or is expected to last, and (3) its permanent or long-term impact, or expected impact. *See* 29 C.F.R. § 1630.2(j)(2); *Guzmán–Rosario v. United Parcel Serv., Inc.,* 397 F.3d 6 (1st Cir. 2005); *Wright v. CompUSA, Inc.,* 352 F.3d 472, 475 (1st Cir.2003).

A "major life activity", as the term is used in the ADA's definition of disability, stands for the basic activities that the average person can perform with little or no difficulty. The EEOC has stated that "major life activities" include, but are not limited to, taking care of oneself, walking,

seeing, speaking, hearing, breathing, learning and working. 29 C.F.R. § 1630.2(1). *See also, Bragdon,* 524 U.S. at 624, 118 S.Ct. 2196.

Triple–S contends in its Motion for Summary Judgment that Corujo was not "disabled" under the ADA. In order to support its argument, Triple–S referred to Corujo's uncontested deposition testimony, in which she admitted that she *was not substantially limited in any major life activity.* Corujo, specifically, stated that she is able to perform every normal and usual activity of life. As to working, Corujo specifically stated that she was able to perform all of the duties and responsibilities inherent to her former position at Triple–S. Among other activities, Corujo admitted that she is able to drive, work, take care of herself, clean herself, cook, entertain herself, and dance. Based on Corujo's clear and direct admissions, Triple–S moves for summary judgment as to Corujo's ADA claim on the basis that she is not "disabled" within the meaning of the Act.

Corujo has not established that her condition substantially limited a major life activity, such as working. For epilepsy to be considered a disabling condition, the Court must initially determine whether it has substantially limited a major life activity. *See E.E.O.C. v. Sara Lee Corp.,* 237 F.3d 349 (4th Cir.2001); *cf. Arnold v. United Parcel Serv., Inc.,* 136 F.3d 854, 862 (1st Cir.1998). Courts have held that epilepsy is not always a disabling condition under the ADA.[1] *E.E.O.C. v. Sara Lee Corp.,* 237 F.3d at 349 (epileptic employee who suffered from occasional seizures, did not sleep well at night and suffered from forgetfulness was not limited in a major life activity and, therefore, was not disabled under ADA). *See also Arnold v. City of Appleton, Wis.,* 97 F.Supp.2d. 937 (E.D.Wis.2000) (the court held that epileptic employee who drove a car, climbed ladders and worked on the roof of his two-story home was not substantially limited in a major life activity and, therefore, was not disabled under ADA); *Reinhart v. Shaner,* 2004 WL 419911 (M.D.Ala.2004) (the court held that there was no evidence that epileptic condition limited employee's ability of caring for oneself, manual tasks, walking, seeing, hearing, speaking, breathing, learning and working and that, therefore, he was not substantially limited in any major life activity and, thus, was not disabled under ADA).

In her reply to defendant Triple–S' motion, Corujo submits **for the first time** that she was limited as to the activity of sleeping. Corujo then submits a recent sworn statement by Dr. Sánchez Longo dated August 29, 2006. This Magistrate Judge will not allow plaintiff's attempt to amend her allegations through the Opposition pleading. *See Alamo Rodriguez v. Pfizer,* 286 F.Supp.2d 144 (D.Puerto Rico 2003). It is one matter that the Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Another is to allow plaintiff to bring forth new never raised allegations, and previously unmentioned major life activities, which have been allegedly affected. The Court is not obliged to search the record, where plaintiff failed to request to

---

1. An epileptic condition is not considered either by its mere existence sufficient for a disability as to substantial gainful activity under 42 U.S.C. Secs. 416(i)(1), 423(d)(1)(A) of the Social Security Act. *Figueroa v. Secretary of Health & Human Servs.,* 585 F.2d 551 (1st Cir.1978).

amend the complaint, in order to set forth those new allegations, and theories. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Barge v. Anheuser–Busch, Inc.,* 87 F.3d 256, 260 (8th Cir.1996); *Alamo,* 286 F.Supp.2d at 144; *Vega Rodríguez v. Loctite Puerto Rico, Inc.,* 967 F.Supp. 653, 658, n. 7 (D.Puerto Rico 1997). *See also Dávila Rivera v. Caribbean Refrescos, Inc.,* 2004 WL 1925477 (D.Puerto Rico 2004).

In Corujo's brief in support of the opposition to summary judgment, she attempted to create an issue of fact by making reference to a statement by Dr. Sanchez Longo which, in general terms, explained that an epileptic patient is substantially limited in the activity of sleeping. Dr. Sánchez Longo's statement, however, must be disregarded. First, plaintiff attempts to create an issue as to facts that Corujo expressly admitted in her deposition. Moreover, Dr. Sánchez Longo's general statement does not refer to Corujo specifically. Instead, in his statement, Dr. Sanchez Longo explained in general terms the effects and impact of an epileptic condition to his patients. As such, Dr. Sánchez Longo's statement, as to all epileptic patients, does not suffice to create an issue of fact as to the activities Corujo is able to perform.

Corujo, who has the personal knowledge to testify as to the impact of epilepsy in her life, never testified about a substantial limitation in the activity of sleeping nor made any similar allegation in the complaint. It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Albertsons,* 527 U.S. at 567, 119 S.Ct. 2162 (holding that monocular vision is not invariably a disability, but must be analyzed on an individual basis, taking into account the individual's ability to compensate for the impairment). That the Act defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner. *See Sutton,* 527 U.S. at 483, 119 S.Ct. 2139; *Albertson's,* 527 U.S. at 566, 119 S.Ct. 2162; *cf. Bragdon v. Abbott,* 524 U.S., at 641–642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (relying on unchallenged testimony that the respondent's HIV infection controlled her decision not to have a child, and declining to consider whether HIV infection is a *per se* disability under the ADA); 29 CFR pt. 1630, App. § 1630.2(j) (2001) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual"); *ibid.* ("The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis"). An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198–199, 122 S.Ct. 681, 691–692, 151 L.Ed.2d 615 (2002) (indicating it is insufficient for individuals attempting to prove disability status to merely submit evidence of a medical diagnosis of an impairment).

As previously noted, Corujo testified that she is not limited in any major life activity, and that the only impact her condition has on her life is that she has to take medications to prevent having episodes of seizures, and that she gets anxious when she feels that she may have a

seizure. Corujo did not specify in her deposition any other impact or effect that her condition has in her life.

Plaintiff's only additional argument in this regard is that she was substantially limited in the major life activity of working. However, as previously discussed, Corujo stated during her deposition that she was not limited in the activity of driving, working, taking care of herself, bathing, cooking, entertaining and dancing. Corujo even admitted such fact in her opposition to Triple–S' motion for summary judgment Moreover, Corujo admitted in her opposition that her condition did not impede or render her incapable of performing every duty and responsibility related to her position in Triple–S. Therefore, mere is no dispute as to the fact that she was not substantially limited in the activity of working.

As to Corujo's argument that she satisfies the "record of" prong of the disability definition under ADA, to have a record of such an impairment, a plaintiff must have a history of, or been classified as having, an impairment that *substantially limited a major life activity. See* 29 C.F.R. § 1630.2(k). The recorded impairment must be one that substantially limited a major life activity. *See Id.; Santiago Clemente v. Executive Airlines, Inc.,* 213 F.3d 25, 33 (1st Cir.2000). As previously discussed, Corujo admittedly is not substantially limited in a major life activity as a result of her condition. Thus, Corujo cannot make her claim under subpart (b) of 42 U.S.C. § 12102(2). The same principle applies to plaintiff's claim that she is entitled to relief under the ADA because Triple–S "regarded her" as a disabled.

Accordingly, since Corujo is not a "disabled" person under the ADA, this Magistrate Judge recommends that Triple–S' summary judgment requested, as to Corujo's disability discrimination claim, be **GRANTED.**

### B. Failure–to–Accommodate Claim under the ADA.[2]

■ Under the ADA, the term "discriminate" includes the employer's failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Unlike other "discriminations", the plaintiff is not required to prove—through direct evidence or the *McDonnell Douglas* burden shifting scheme—that the employer's omission was motivated by discriminatory animus directed at the disability. *Higgins,* 194 F.3d at 264. A failure-to-accommodate claim has a different set of requirements, all of which must be met if the plaintiff is to survive a motion for summary judgment. The First Circuit listed the following requirements:

(a) The plaintiff must furnish sufficient admissible evidence that she is a *qualified individual with a disability* within the meaning of the ADA;

(b) That she worked for an employer covered by the ADA;

(c) That the employer, despite its knowledge of the employee's physical limitations, did not accommodate those limitations;

(d) That the employer's failure to accommodate the known physical limitations affected the terms, conditions, or privileges of the plaintiff's employment.

*See Higgins,* 194 F.3d at 264.

Reasonable accommodations may include "job restructuring, part-time or mod-

---

**2.** Although having already discussed that Corujo is not a "disabled" person under the ADA disposes of her failure-to-accommodate claim, we will briefly discuss defendant's additional arguments in support of dismissal of such claim.

ified work schedules, reassignment to a vacant position ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (emphasis supplied). A careful, individualized review of an accommodation request in light of the specific facts of the case is needed to determine whether the request was reasonable. *Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 647 (1st Cir. 2000).

■ To show that a proposed accommodation was reasonable, a plaintiff must prove "not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir.2001). The request for accommodation must be " 'sufficiently direct and specific,' giving notice that she needs a 'special accommodation.' " *Id.* at 261 (quoting *Wynne v. Tufts Univ.,* 976 F.2d 791, 795 (1st Cir.1992)).

Triple–S contends the request for reasonable accommodation made by Corujo is not the one mandated by the ADA, and that Corujo fails to state a failure-to-accommodate claim.

The undisputed facts support Triple–S' argument. The facts show that the accommodation Corujo sought, based on her treating physician's letter, was not to enable her to perform the essential functions of her job at Triple–S, but to improve her condition. Corujo admitted during her deposition that she did not need a reasonable accommodation to perform her duties but that she wished to be accommodated to improve her condition and to prevent it from deteriorating.

This Magistrate Judge agrees with defendant Triple–S in that Corujo's request for accommodation is not the type of reasonable accommodation contemplated by the ADA. The ADA requires a reasonable accommodation to allow a disabled individual to perform the essential duties of the position, not to accommodate the medical needs. "As is implicit from [the ADA's reasonable accommodation] definition, an employer's obligation to make 'reasonable accommodations' only extends to job-related adjustments or modifications." *Brookins v. Indianapolis Power & Light Co.,* 90 F.Supp.2d 993, 1003 (S.D.Ind.2000).

"The obligation to make reasonable accommodation is a form of non-discrimination. It applies to all employment decisions and to the job application process. This obligation does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability. Thus, if an adjustment or modification is job-related, e.g., specifically assist the individual in performing the duties of a particular job, it will be considered a type of reasonable accommodation. On the other hand, if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide." *Brookins,* 90 F.Supp.2d at 1003–1004; *Robertson v. The Neuromedical Center,* 161 F.3d 292, 296 (5th Cir.1998). Triple–S was not compelled by the ADA to provide Corujo with the accommodation she sought.

Triple–S further argues that it fully complied with its obligations under the ADA by engaging in an interactive process as part of which it provided Corujo's treating physician with the documentation that he requested and sought Corujo's authorization to obtain and disclose her medical records. However, Corujo failed to cooperate and was responsible for the breakdown in the interactive process initiated by Triple–S. We agree with defendant that

Corujo's failure to corporate in the interactive process bars any recovery under a failure-to-accommodate theory.

In Corujo's opposition to summary judgment, she admitted all of the facts related to the interactive process in which Triple–S engaged and all of her and her doctor's actions and omissions which caused the breakdown in the interactive process. In sum, Corujo admitted that, after Triple–S received her treating physician's letter recommending a reasonable accommodation and requesting a copy of Corujo's job description, Triple–S immediately executed two important actions: (1) sent a letter to Corujo's treating physician adjoining copy of Corujo's job description; and (2) gave Corujo a copy of Triple–S' "Policy Regarding the Disclosure of Medical Information Compiled by the Dispensary" to obtain and disclose information related to Corujo's health. This would have facilitated the interactive process with Corujo in the search for a reasonable accommodation, if necessary. Corujo also admitted in her opposition that she did not authorize Triple–S's Dispensary to obtain or disclose her medical records and information by repealing her prior consent to that effect, and that Dr. Sanchez Longo never responded to Triple–S' letter after he received a copy of Corujo's job description, therefore, failing to identify the specific restrictions, if any, related to Corujo's condition and possible ways to accommodate the same.

As such, Corujo and her treating physician were responsible for the breakdown in the interactive process. Failing to cooperate in the interactive process is fatal to an individual's ADA claim for reasonable accommodation. The EEOC guideline states that where **the employer has sought documentation of a non-obvious disability and the employee does not provide reasonable documentation,** "then s/he is not entitled to reasonable accommodation." *See Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act,* 1999 WL 33305876, at Question 6; *and see* http://www.eeoc.gov/policy/docs/accommodation.html#other.

Courts generally agree that individuals must cooperate in the interactive process. For example, in *Phelps,* 251 F.3d at 21, the Court of Appeals for the First Circuit held that the employee was responsible for the breakdown in the interactive process. The Court therein noted that the employer began the interactive process "immediately" after the employee's termination, "returned her phone calls and letters promptly, and generally acted in good faith." *See Garcia–Ayala,* 212 F.3d at 638 (holding that the employer's duty under the ADA is an interactive process that requires a great deal of communication between the employee and the employer). The employee, on the other hand, turned down job opportunities offered by the employer, and placed "significant conditions" on her reassignment which "severely limit[ed]" the employer's flexibility. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278 (11th Cir.1997) (The court held that since the employer made "reasonable efforts to communicate with the employee" and the employee caused "a breakdown in the interactive process," "[l]iability simply cannot arise under the ADA."); *Kvorjak v. Maine,* 259 F.3d 48 (1st Cir.2001) (An employer "cannot be held responsible for knowing information about a disability that an employee deliberately chooses to withhold."); *Templeton v. Neodata Services, Inc.,* 162 F.3d 617 (10th Cir.1998) (An employer "cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes."); *Steffes v. Stepan Co.,* 144 F.3d 1070 (7th Cir.1998) (Employee

was responsible for the breakdown in the interactive process because the employer had legitimate concerns about the employee's work restrictions, and the employee "had it within her power" to obtain more comprehensive and responsive information from her doctor.); *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130 (7th Cir.1996) (Employee lost her right to accommodation because she was responsible for the breakdown in the reasonable accommodation "interactive process" by failing to cooperate with the employer's requests. Employer "cannot be held liable for failure to make 'reasonable accommodation'" when it "was never able to obtain an adequate understanding of what action it should take."); *see also Phelps,* 251 F.3d at 27 (stating both parties have duty to engage in interactive process); *Calero–Cerezo v. U.S. Dept. Justice,* 355 F.3d 6, 23 (1st Cir.2004).

Thus, Corujo's failure-to-accommodate claim is without merit. Contrary to Corujo's allegations, her request for a reasonable accommodation is not mandated by the ADA. Moreover, and notwithstanding such circumstance, Corujo and her physician were admittedly responsible for the breakdown in the interactive process initiated by Triple–S. Accordingly, this Magistrate Judge recommends that defendant Triple–S' request for summary judgment

as to Corujo's failure-to-accommodate claim be **GRANTED.**

## C. Triple–S' Legitimate Nondiscriminatory Reason for Corujo's Termination.

Although it was above discussed that Corujo is not disabled under the ADA and, as such, cannot establish a *prima facie* case under the Act, Triple–S proffered a legitimate nondiscriminatory reason for its actions which we proceed to evaluate. According to Triple–S, Corujo was terminated from her employment solely based on her failure to return to work after the 365-day job reserve period granted by local statute S.I.N.O.T. had elapsed. *See* Act No. 139 Of June 26, 1968.[3] Defendant Triple–S argues that, once the statutory period for a leave elapsed and the employee had not returned to work, the employer can terminate and such termination would be for just cause. Triple–S cited *Lamoutte v. Compañía de Turismo,* 130 D.P.R. 70, 78 (1992), to support its position.

Plaintiff countered by arguing that Triple–S' proffered reason for terminating her was a pretext for disability discrimination. Corujo's main argument in support of her claim of pretext is that Triple–S could have allowed her to enjoy an additional leave after the 365-day employment

---

**3.** Such statute states: (q) Reinstatement after disability-In cases of disability for work pursuant to the provisions of this chapter, the employer is compelled to protect the employment position held by the worker at the onset of the disability and to reinstate him/her in the same position, subject to the following conditions:

(1) That the worker petitions the employer to be reinstated in his/her employment position within the term of fifteen (15) days, from and after the date the worker was discharged from the hospital, provided said petition has not been made after a lapse of one (1) year from the date of onset of the disability;

(2) that the worker is mentally and physically capable to discharge said employment at the time of requesting such reinstatement from the employer; and

(3) that said employment is available when the worker requests reinstatement. It shall be understood that the employment is available when it is vacant or another worker is engaged therein. It shall be presumed that the employment was vacant when same was filled by another worker within the thirty (30) days following the date in which the reinstatement petition was made. PR STT. 11 § 203 (emphasis supplied).

reserve period expired, but it did not do so. However, we agree with defendant Triple–S that Corujo's theory is no proof of discrimination.

In the third prong of the burden shifting scheme, Corujo must do more than simply refute or cast doubt on the company's rationale—*Medina Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990)—the plaintiff must show an impermissible discriminatory animus. *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 842 (1st Cir.1993). "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct". In other words, "it is not enough ... to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 146–147, 120 S.Ct. 2097. As the Court of Appeals for the First Circuit stated in *Ronda v. Banco Bilbao Vizcaya Argentaria*, 404 F.3d 42 (1st Cir.2005), "[a] pretext 'for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." [4]

Plaintiff relies on *Garcia–Ayala*, 212 F.3d at 638 [5] to support her argument. The *Garcia–Ayala* case is not related to pretext but whether a plaintiff's request for an additional leave constituted a request for reasonable accommodation under ADA, which is not an issue in this case. [6] As such, Corujo's reference to *Garcia–Ayala* is irrelevant to the issue of pretext.

Plaintiff further countered by stating that her termination did not comply with the 365–day rule under S.I.N.O.T. According to Corujo, she was terminated effective on February 17, 2005 and not on February 18, 2005. Per Corujo's argument, the 365–day employment reserve period expired on February 17, 2005 and, therefore, she was entitled to be reinstated. Corujo's theory in this regard is not only incorrect, but totally irrelevant for purposes of pretext. As the defendant aptly argued it in its reply papers, "a pure mathematical exercise proves plaintiff wrong". As of February 17, 2005, 367 days had passed since Corujo first reported her illness to S.I.N.O.T. on February 17, 2004. Therefore, as of February 17, 2005, Corujo could have been terminated under S.I.N.O.T. Plaintiff's argument is, therefore, inconsequential for purposes of the Motion for Summary Judgment since it does not change the outcome of Triple–S' decision. Corujo would have been terminated for cause under S.I.N.O.T. provisions on February 17, 2005 because more than 365 days had already passed.

Likewise, with regards to Corujo's argument that the 365–day period commenced on February 18, 2004 and not on February 17, 2004 pursuant to the Puerto Rico Political Code, it is not only incorrect, but

---

**4.** This is consistent with dictionary guidance: "something that is put forward to conceal a true purpose or object." *The Random House Dictionary of the English Language*, 1534 (2d ed.1987).

**5.** *Garcia–Ayala*, 212 F.3d at 645 (holding being flatly wrong under the precedent that ADA can never impose an obligation on a company to grant an accommodation beyond the leave allowed under the company's own

leave policy) (citing *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166, 171–7 (1st Cir.1998)).

**6.** It is important to note that Corujo never requested additional leave before or after the 365 days had elapsed. In fact, during the 365–day employment reserve period, Corujo did not engage in any communication with Triple–S to inform the company of her progress or her doctor's prognosis as to her possible return to work.

irrelevant and inconsequential for purposes of pretext. Even accepting February 18, as the onset of the 365-day period it would have expired on February 16, 2005 (365th day). As of that date, Corujo had not yet reported back to work nor had communicated with the employer regarding her return. Therefore, plaintiff's argument as to the calculation in time lacks merit.

We now turn to the two persons as to whom Corujo referred to in her opposition in order to prove pretext: Rosa Velez Medina ("Vélez") and Damaris Nieves ("Nieves"). Corujo stated that Velez and Nieves were not terminated from their employment at Triple-S despite the fact they had expired their reserve period under S.I.N.O.T. The undisputed evidence brought forth by defendant Triple-S, not contested by plaintiff, dismantles plaintiff's theory.

As to Velez, the document presented by plaintiff as **Exhibit 14** and the Unsworn Declaration Under Penalty of Perjury of Mama Aguiar presented by the defendant as an Exhibit to its reply papers demonstrate Velez was, in fact, terminated when the 365-day employment reserve period under S.I.N.O.T. expired.

As to Nieves, a Union employee, the undisputed evidence also shows she was also terminated because she did not request reinstatement within the period set by the Collective Bargaining Agreement in force during 1993–1994, which was 10 months, for a non-occupational disability leave. Like Corujo, Nieves did not request reinstatement during the period set by the Collective Bargaining Agreement and, for that reason, she was terminated.

Thus, Corujo's attempt to establish pretext with the treatment of similarly situated individuals fails because their treatment was not inconsistent with Corujo's termination. To the contrary, both cases prove that, in the presence of similar circumstances, Triple-S consistently applies its termination policy upon expiration of the reserved period.

In sum, Corujo failed in her opposition to summary judgment to present "definite competent evidence" necessary to show that Triple-S's proffered reason for terminating her was pretextual and that the real motivation was discrimination. Therefore, this Magistrate Judge recommends that defendant Triple-S' summary request as to plaintiff's discrimination claim under the ADA regarding her employment termination be **GRANTED**.

### D. Harassment Claim under the ADA.

■ Corujo also alleges that during her employment with Triple-S she was harassed on account of her disability. Corujo's harassment allegation is based on several incidents which were described in the *Factual Background* section of this Report and Recommendation. Triple-S contends that Corujo fails to establish a harassment claim under ADA because she has not proven the alleged harassment conduct was related to her condition. Triple-S made reference to the nature of the remarks and incidents and to Corujo's deposition testimony in which she admitted not knowing the reason which motivated the remarks and incidents she considers to constitute harassment.

To assert a hostile work environment claim under an analogous federal statute, such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17 (1994 & Supp.2003), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1994 & Supp.2003), or the ADA, 42 U.S.C. §§ 12131–12165 (1994 & Supp.2003), plaintiff must show that her "workplace was permeated with

discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Quiles–Quiles v. Henderson,* 439 F.3d 1, 7 (1st Cir.2006) (assessing hostile work environment claim under the Rehabilitation Act). Relevant are "the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance." *Quiles–Quiles,* 439 F.3d at 7. Plaintiff must demonstrate that "the workplace was both subjectively and objectively hostile." *Mannie v. Potter,* 394 F.3d 977, 982 (7th Cir.2005).

In characterizing the negative workplace environment, courts have drawn a continuum between rudeness and ostracism, on one side of the spectrum, and severe or pervasive harassment on the other side, generally finding that "rudeness or ostracism, standing alone" is insufficient to support a hostile work environment claim and that severe or pervasive harassment is actionable. *Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir.2005); *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 52 n. 12 (1st Cir.1999).

This case features a lack of supporting evidence of treatment "that a reasonable person would find hostile or abusive." *Id.* In fact, Corujo's opposition to summary judgment does no address Triple–S' argument that she has failed to establish a harassment claim under the ADA. Corujo did not even argue that the remarks and incidents which she considers to be "harassment" were motivated by her epileptic condition. Corujo simply stated that "a cause of action for hostile work environment is present here" (*see page 14 of plaintiff's Opposition Brief, Docket No. 23*). Plaintiff did not bring forth in her opposition any argument to support her harassment claim in order to prove to the Court that, in fact, the allegations made by her as to the basis for her claim of harassment were because of her alleged condition.[7]

Even were we to characterize the alleged conduct has hostile, there is no evidence on record suggesting that it was directed at plaintiff "because of a characteristic protected by a federal anti-discrimination statute." *Quiles–Quiles,* 439 F.3d at 7–8.

■ As stated by the First Circuit in a Title VII harassment case, Title VII is neither a civility code nor a general anti-harassment code. *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 37 (1st Cir.2003); *see Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1st Cir.2001). Rather, an employee claiming harassment must demonstrate that the hostile conduct was directed at her because of a characteristic protected by a federal anti-discrimination statute. *Lee–Crespo,* 354 F.3d at 43 n. 5. *See also Arrieta–Colón v. Wal–Mart P.R., Inc.,* 434 F.3d 75, 88 (1st Cir.2006) (affirming disability harassment verdict where the evidence showed that plaintiff was subject to "constant mockery" due to his disability).

7. Corujo also failed to rebut defendant's contention that her allegations with regards to the pressure she allegedly felt in her job, the comments allegedly made by her supervisor that she was to slow, she had to finish her work, and whether she was managing well her cases were not arbitrarily made. Plaintiff did not contest the fact she had a pattern of delay and not complying with the standard amount of cases that had to be completed per day and therefore, the alleged comments made by her supervisor with regards to her performance were not made with the intention to "harass" her.

In this case, the statements Corujo complains of may be considered inappropriate, but do not reach the level of offense required by *Harris,* 510 U.S. at 17, 114 S.Ct. 367. Corujo's facts even if true are insufficient to support her claim because the comments alone do not rise to the severity and pervasiveness necessary to sustain a hostile work environment charge. *See e.g. Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 509 (5th Cir.2003) (finding that a disabled employee who was told by her employer that "she better get better this time" and that he would "no longer tolerate her health problems" was not subjected to a hostile work environment under the ADA); *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 564 (5th Cir. 1998) (finding that an employer's boorish behavior toward an employee regarding the slow pace of the employee's recovery from a disease, his reassignment of work away from her, and his insensitivity toward her need for surgery and time to recuperate was not sufficient as a matter of law to state a claim of hostile environment harassment).

Accordingly, this Magistrate Judge recommends that defendant Triple–S' request for summary judgment as to plaintiff's harassment claim under the ADA be **GRANTED.**

### E.   Retaliation Claim under the ADA.

Corujo further alleges she was terminated from employment at Triple–S on February 18, 2005, for having filed a charge of discrimination in the ADU back on February 24, 2004.

██  To establish a claim of retaliation, "a person must show he/she was engaged in protected conduct, he/she was discharged, and that there was a causal connection between the discharge and the conduct." *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir.1997). The essence of a retaliation claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct. *Sifre v. Department of Health,* 38 F.Supp.2d 91, 101 (D.Puerto Rico 1999) *aff'd.* 214 F.3d 23, 26 (1st Cir.2000) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 386–387 (6th Cir.1999)). *See also Vicenty–Martell v. Estado Libre Asociado De Puerto Rico,* 48 F.Supp.2d 81, 88 (D.Puerto Rico 1999) ("To establish a case of retaliation under the ADEA or the ADA, the complainant has to make a *prima facie* showing that 1) he/she or she engaged in protected conduct; 2) he/she or she was subject to an adverse employment action; and 3) a causal connection existed between the protected conduct and the adverse action.").

While Triple–S concedes that Corujo meets the "protected activity" and the "adverse employment action" prongs of the *prima facie* case, Triple–S contends she is unable to show the required causal connection between her charge of discrimination in the ADU and her termination. Defendant Triple–S refers to the passage of time (12 months) between the filing of the charge in the year 2004 and Corujo's termination in the year 2005 to prove a causal connection does not exist between both events. Based on the substantial amount of time between Corujo's filing with the ADU and the alleged retaliation, Triple–S argues there is no causal relationship between the conduct protected by the ADA and Corujo's termination.

In her opposition to summary judgment, Corujo simply argued that the temporal proximity between her filing with the ADU and her termination gives rise to an inference of retaliation.

While disciplinary action after engaging in protected conduct is indirect proof of a causal connection, it is equally true the causal connection disappears in the lapse of time. *Centro Medico del Turabo v. Feliciano de Melecio,* 406 F.3d 1, 10 (1st Cir.2005). Thus, the passage of time weakens the causal nexus necessary to establish that an adverse employment action was the result of retaliatory animus. While more time passes between the adverse employment action and any protected activity, the less likelihood a court will find a causal relation between them. *See Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 110 (1st Cir.1988); *Morgan v. Massachusetts General Hospital,* 901 F.2d 186 (1st Cir.1990). "One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." *David James Wyatt v. City of Boston,* 35 F.3d 13, 16 (1st Cir. 1994); *Mesnick v. General Electric Co.,* 950 F.2d 816 (1st Cir.1991) (nine months between EEOC complaint and discharge too long).

In the absence of other evidence of retaliatory animus, the substantial amount of time between Corujo's administrative filing and her termination does not support the required nexus. *Bishop v. Bell Atlantic,* 299 F.3d 53 (1st Cir.2002) *quoting Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 272–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (if temporal proximity is the only evidence of causality establishing *prima facie* retaliation, proximity must be "very close"; twenty months is insufficient); *see also Oliver,* 846 F.2d at 110–11.

Corujo has failed to make a *prima facie* case of retaliation under the ADA[8] because she did not present evidence to support her allegation that a causal connection existed between the charge filed by her in the ADU and her termination.[9] Furthermore, based on the jurisprudence above cited, the passage of time in this case militates against the retaliation claim.

Accordingly, this Magistrate Judge recommends that Triple–S' summary motion as to Corujo's retaliation claim under the ADA be **GRANTED.**

## F. Retaliation Claim under the FMLA.

The FMLA applies to private sector concerns that employ fifty or more persons. 29 U.S.C. § 2611(4). Congress enacted it as a means of alleviating the tension that so often exists between the demands of earning a living and the obligations of family life. *See Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir.1998); *Price v. City of Fort Wayne,* 117 F.3d 1022, 1024 (7th Cir. 1997). To achieve this objective, the FMLA seeks to balance authentic family needs and legitimate employer interests. *See* 29 U.S.C. § 2601(b)(1), (3). This accommodation entails a set of entitlements for employees and a matched set of rules for employers.

---

**8.** The Court also agrees that Triple–S' explanation for Corujo's termination, which was discussed above, is a legitimate and nondiscriminatory reason that was not rebutted by Corujo, which also disposes of Corujo's retaliation claim.

**9.** *But see Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2409, 165 L.Ed.2d 345 (2006) (holding the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. The provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination).

An employee becomes eligible for FMLA leave if he or she has been employed by a covered employer for no less man a year and has worked at least 1250 hours during the preceding twelve months. *Id.* § 2611(2)(A). Once eligible, an employee may take reasonable periods of unpaid leave for medical reasons, for childbirth or adoption, or for the care of a spouse, parent, or child who suffers from a serious health condition. *Id.* § 2601(b)(2). Leave periods are circumscribed: an eligible employee may take a maximum of twelve workweeks of FMLA leave in any twelve-month span. *Id.* § 2612(a)(1). Following such a leave, an employee is entitled to reclaim his or her former job (or some other position with equivalent pay, benefits, and conditions of employment). *Id.* § 2614(a)(1); *Navarro v. Pfizer Corp.,* 261 F.3d 90, 94 (1st Cir.2001).

Plaintiff Corujo has submitted entitlement to FMLA, in the opposition to summary judgment requested by defendant Triple–S, solely on the ground that she had been absent for one(1) year and under treatment, which should serve as a basis to bring her claim under FMLA protection. The complaint mentions FMLA at item 5, being an individual covered by FMLA, at item 7 as defendant Triple–S being an employer under FMLA and as suffering retaliation for availing herself of FMLA. *See* Complaint ¶ 5, 7, 12.

Corujo stated during her deposition and in her opposition to summary judgment that her retaliation claim was exclusively based on the fact that she filed a discrimination charge against Triple–S in the ADU on February 24, 2004. Corujo has neither contested Triple–S' averment that there were no communications between them during her extended leave of absence under S.I.N.O.T. and as such, Corujo never requested to the employer additional leave prior to the expiration of her absence because of her condition.

Similar to above, in FMLA retaliation claim plaintiff employee must carry the initial burden of coming forward with sufficient evidence to establish a *prima facie* case of . . . retaliation. If he/she does so, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]," sufficient to raise a genuine issue of fact as to whether it discriminated against the employee. . . . If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave. *See Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 336 (1st Cir.2005); *Hodgens v. General Dynamics Corporation,* 144 F.3d 151, 160–61 (1st Cir.1998).

Accordingly, and under the above discussed as to discrimination and retaliation, Corujo has also failed to establish a retaliation claim under the FMLA. Evidence of this is the fact that when she was asked as to the grounds for her retaliation claim, Corujo never mentioned the FMLA. As in *Colburn,* plaintiff Corujo has failed to produce evidence of the sort commonly used to show pretext. There is no statement by any decision maker evidencing retaliatory motive. *See Hodgens,* 144 F.3d at 168–69. And there is no evidence that comparably situated employees, were not terminated. *See Smith v. Allen Health Sys.,* 302 F.3d 827, 835 (8th Cir.2002); *Colburn,* 429 F.3d at 338. Therefore, we see no need to further elaborate this point, and it is recommended that Triple–S' summary request as to Corujo's retaliation claim under FMLA be **GRANTED.**

### G. Plaintiff's Supplemental Claims.[10]

Having already disposed of plaintiff's federal claims as above discussed, the remaining pendent state claims are to be addressed. Plaintiff Corujo submitted claims under Law No. 44 of July 4, 1995, which prohibits discrimination against individuals with physical and mental disabilities in public institutions or private entities, with more than fifteen employees, that receive funds from the Commonwealth of Puerto Rico. The definition of disability in said state law parrots de ADA's definition of disability. 1 P.R. Laws Ann. Sec. 501, *et seq.* Corujo also submitted claims under Law No. 115 of December 20, 1991, which creates a presumption the employer retaliated against its employee (anti-retaliation statute). 29 P.R. Laws Ann. Sec. 194a(c). Finally, Corujo submits claims under Articles 1802 and 1803 of the Puerto Rico Civil Code. 29 P.R. Laws Ann. Sec. 5141.

Pendent or supplemental jurisdiction claims by plaintiff are subject to this Court discretionary power. Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1175 (1st Cir.1995).

In *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See Martinez v. Colón,* 54 F.3d 980, 990 (1st Cir.1995).

The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." *Rodríguez v. Doral Mortgage Corp,* at 1177; *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 257 (1st Cir.1996).

The exercise of pendent jurisdiction being discretionary, and there remaining no cognizable federal claims in this litigation, this Magistrate Judge recommends the Court should decline to exercise pendent jurisdiction as to those plaintiffs' state law claims, whose federal cause of action were object of summary disposition, dismissing them without prejudice.

### CONCLUSION

In light of the foregoing, it is recommended that Triple–S' Motion for Summary Judgment (Docket No. 13) be **GRANTED.**

### IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommenda-

---

10. In Corujo's opposition to defendant's Motion for Summary Judgment, she did not contest the arguments brought forth by Triple–S as to her supplemental claims.

tion. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").